BABB ET AL., APPELLANTS, *v.* FORD MOTOR COMPANY, INC., APPELLEE, ET AL.

(No. 52023—Decided June 15, 1987.)

*Schulman & Schulman, Howard A. Schulman, Friedman & Chenette*

Co., L.P.A., and *Jeffrey H. Friedman,* for appellants.

*Gallagher, Sharp, Fulton & Norman* and *Burt J. Fulton,* for appellee.

MARKUS, C.J. The defendant automobile manufacturer prevailed against the plaintiffs' product liability claims for the driver's injuries in a single-car crash, and her mother's resulting emotional distress. The jury found that the manufacturer negligently failed to warn about dangers in its defectively designed cruise-control system. However, they also found that neither the defective design nor the negligent warning proximately caused the driver to lose control and hit a tree.

The driver and the owner appeal, complaining that the court failed to enforce their discovery rights and restricted evidence about allegedly similar incidents.[1] The court should have required the manufacturer to pay the plaintiffs' expenses to secure compliance with certain discovery requests. Accordingly, we remand for that limited purpose. Otherwise, the assigned errors lack merit, so we affirm the trial court's judgment.

I

The driver was the sole occupant of her mother's car when the accident occurred. The car traveled around a curve at the top of a hill on a two-lane roadway, at approximately seventy miles per hour. It swerved around another car, collided with a tree, and caught fire. The driver sustained serious injuries. The plaintiffs claimed that the driver lost control because the car's cruise-control system malfunctioned. The manufacturer contended that driver error caused the crash.

The driver's mother purchased the vehicle from the manufacturer's dealer as a new car, almost four years before the accident. She said that it was then "idling very fast," and was periodically "surging" or "racing." During the years before the accident, she drove the car more than forty-six thousand miles. She repeatedly took it to the selling dealer and other service facilities to repair the "surging" problem.[2] She never attempted to use the cruise control herself.

If the defendant's cruise control operates properly, the driver must activate it by (a) pressing the "on button," and (b) pressing the "set speed button." It should not activate itself. It should deactivate after the driver activates it, if the driver (a) presses the "off button," (b) presses the "cruise" or coast button, (c) applies the foot brake, (d) turns the ignition off, or (e) permits the speed to fall more than ten miles per hour below the set speed. All these controls are electrically operated.

The plaintiffs contended that the system was defective because it lacked a supplemental mechanical device to

---

[1] Their seven assignments of error appear in an appendix, *infra.* They do not separately argue their seventh assignment, that the court declined to grant a new trial, so we do not address it separately. See App. R. 12(A). In substance, that assignment claims that other assigned errors merited a new trial, so our discussion of those alleged errors sufficiently considers that assignment. In any event, we cannot say that the court abused its discretion by denying the plaintiffs' motion for a new trial. Cf. *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82, 52 O.O. 2d 376, 262 N.E. 2d 685, paragraph one of the syllabus.

[2] The jury separately awarded the mother $10,000 damages for the depreciated value of a generally defective automobile, under the Magnuson-Moss Consumer Warranty Act, Section 2301, Title 15, U.S. Code, *et seq.* Neither party has appealed from that part of the judgment.

disengage it when the driver applied the brake pedal. They asserted that a major competitor provided that additional safeguard, and that the electrical disengage system can fail when the brake stop-light switch fails.

The plaintiff-driver described her version of the events. She testified that the car accelerated as she started up a hill. She concluded that the cruise-control system caused it to accelerate, even though she had not turned it on, because the gas pedal "dropped." She pressed the cruise control "off button," tapped the brake pedal, and tapped the gas pedal. She then pressed the brake pedal using both feet with her full strength. She claimed that the car continued to accelerate, despite her efforts.

Another motorist testified that the car swerved and skidded by him at a high speed, left the road and hit a tree. The road showed "yaw" marks, but not tire marks of the type which result when the brakes stop their rotation. The fire destroyed most of the car, so investigators could not effectively examine suspect parts. Expert witnesses for the two sides gave conflicting opinions whether the cruise-control system was defective and whether it contributed to cause this accident.

The jury returned answers to interrogatories, together with its general verdict for the defendant manufacturer. They found that "there was a product defect" in the mother's car when she purchased it. The defect consisted of "surging caused by defective cruise control system." However, the defect was *not* "a proximate cause of the accident." The car was defective because the owner "thought cruise control was off when it was actually on." It "failed to perform as safely as an ordinary consumer would anticipate," but the "risks inherent with that design" did not outweigh its "benefits."

In another interrogatory answer, the jury again found that the defect was *not* "a proximate cause of the accident." They answered that the manufacturer "negligently failed to warn plaintiffs of any danger in the use or operation of the cruise control system." However, its negligence was *not* "a proximate cause of the accident." Finally, they could not state "the proximate cause of the accident," with agreement by the requisite three-fourths majority.

## II

The plaintiffs' first three assignments of error contest the court's exclusion or restriction of evidence about allegedly similar incidents with similarly designed cruise-control systems. The plaintiffs sought to present letters from consumers to the manufacturer or the National Highway Traffic Safety Administration about incidents when cruise-control mechanisms malfunctioned. They had obtained these materials by discovery from the defendant manufacturer.

The court permitted the plaintiffs to question the manufacturer's design engineer about those complaints for all brands which the manufacturer produced during six model years. Over the manufacturer's objection, the court resolved conflicting evidence to find that those cars were sufficiently similar so complaints about them had probative value.

The parties later stipulated that those one hundred thirty-eight reports included (a) ninety-nine incidents in which foot brake applications did not disengage the cruise control, (b) forty-three in which the "off button" did not disengage it, (c) twenty-nine in which the car accelerated beyond the set speed, and (d) two in which it activated itself. The court reread the same stipulation to the jurors at their request

during the course of their deliberations.

However, plaintiffs contest the court's ruling that they could not use the letters to prove that the reported incidents actually occurred as the letters described them. Rather, the court admitted the plaintiffs' evidence about them solely to show the manufacturer's notice of the alleged defect or danger. The court so instructed the jury, and excluded the letters as exhibits in an apparent effort to discourage their misuse for the precluded purpose.

The disputed reports were inadmissible hearsay when offered to prove that the facts they assert are true. Evid. R. 801(A) through (C); cf. *Miles* v. *General Tire & Rubber Co.* (1983), 10 Ohio App. 3d 186, 190, 10 OBR 258, 262, 460 N.E. 2d 1377, 1382. In other words, the plaintiffs could not use them to show that those incidents actually occurred as the writers described them. To prove those incidents, they would need testimony from witnesses who observed them, or equivalent evidence which satisfied some exception to the hearsay bar.

The plaintiffs argue that the materials constitute "records of regularly conducted activity" which satisfy the hearsay exception in Evid. R. 803(6). They would be correct, if they properly authenticated them, to show that the manufacturer received those complaints and thereby derived notice of their contents. They are wrong when they offer them to show that the writers accurately reported the information they contain.

The writers were not part of the "regularly conducted business activity," nor did the writers derive their information from such persons. See Staff Note to Evid. R. 803(6); *McCormick* v. *Mirrored Image, Inc.* (1982), 7 Ohio App. 3d 232, 233, 7 OBR 294, 295, 454 N.E. 2d 1363, 1365. The information in reports that a business receives from outside sources is not part of its business records for the purposes of Evid. R. 803(6). Cf. *Hytha* v. *Schwendeman* (1974), 40 Ohio App. 2d 478, 486, 69 O.O. 2d 419, 423, 320 N.E. 2d 312, 318 (same result under statute which preceded Evidence Rules).

The plaintiffs also complain that the court excluded evidence about complaints relating to various brands for three earlier model years. The court declined to admit that evidence until they provided foundation evidence that those cars were sufficiently similar so evidence about them had probative value. After the plaintiffs presented their foundation evidence, they neglected to offer the disputed evidence about those complaints. Hence, there was no ruling upon which the plaintiffs can predicate error, for complaints about those earlier model years.

Moreover, the trial court has discretion to determine whether other events or objects are sufficiently similar to contested events or objects that evidence about them has probative value. *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 473, 21 O.O. 3d 285, 296, 424 N.E. 2d 568, 580. If so, that circumstantial evidence may aid in the resolution of disputed matters. If not, it has no relevance, or "its probative value is substantially outweighed by the danger of unfair prejudice." See Evid. R. 403(A).

The proponent of such evidence has the burden of supplying necessary foundation evidence to show the alleged similarity. See *McQueen* v. *Goldey* (1984), 20 Ohio App. 3d 41, 49, 20 OBR 44, 52, 484 N.E. 2d 712, 721. In this case, the court did not abuse its discretion by declining to admit evidence about the three earlier model years before the plaintiffs provided such foundation evidence. Further, the court would not have abused its discre-

tion by so ruling after the plaintiffs' foundation evidence, since it showed some significant difference for those earlier models. Cf. *Republic Iron & Steel Co.* v. *Yanuszka* (C.A.6, 1909), 166 F. 684.

The plaintiffs also contend that the court should have admitted the letters for all purposes, as a sanction for the manufacturer's disobedience to discovery orders. While they assert that the manufacturer delayed proper discovery responses, they do not deny that they ultimately received the data they were entitled to receive. The trial court has substantial discretion in selecting appropriate sanctions for discovery abuse. *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 85-86, 19 OBR 123, 125-126, 482 N.E. 2d 1248, 1250-1251; *Fairfield Commons Condominium Assn.* v. *Stasa* (1985), 30 Ohio App. 3d 11, 14-15, 30 OBR 49, 52, 506 N.E. 2d 237, 241-242.

Ordinarily, the court should not admit otherwise improper evidence or exclude otherwise proper evidence as a sanction, unless the discovery abuse dictates that response. Cf. *Ward* v. *Hester* (1973), 36 Ohio St. 2d 38, 65 O.O. 2d 181, 303 N.E. 2d 861, syllabus. In this case, the plaintiffs rejected a proffered continuance to evaluate the manufacturer's tardy discovery responses. They insisted that the sanction should be the admission of the disputed records. We cannot say that the court abused its discretion by declining to impose that sanction here.

Finally, the exclusion of the disputed letters for any purpose was harmless, even if it was error. At most, they would have helped to show that the manufacturer's accelerator and cruise-control system were defective, or that the manufacturer gave negligently inadequate warnings. The jury's answers to interrogatories establish that they found in the plaintiffs' favor on those issues, despite the absence of the disputed evidence.

The jury rejected the plaintiffs' claims for a different reason. They found that the plaintiffs had not shown that the defect or inadequate warnings proximately caused the accident. In other words, the jury found a defect that could have contributed to cause the accident, but found that it did not cause it. The disputed evidence would not have assisted the plaintiffs in showing what happened that day to cause the accident. For all these reasons, we overrule the plaintiffs' first three assigned errors.

III

The plaintiffs' remaining assignments challenge the court's rulings on their requests for discovery and related sanctions. On March 19, 1984, the plaintiffs served interrogatories with their complaint. They asked the manufacturer to answer the following questions within twenty-eight days after it received them:

"13. State the make, model and model year of each and every vehicle which was manufactured by [the defendant manufacturer] with the acceleration system used in plaintiffs' automobile.

"14. State the make, model and model year of each and every vehicle which was manufactured by [the defendant manufacturer] with the cruise-control system used in plaintiffs' automobile.

"15. Has defendant received any complaints, notices or reports of any malfunctions, in the acceleration and/or cruise-control systems used in the manufacture of plaintiffs' automobile, which resulted in the engine surging, overspeeding or going out of control?

"16. If the answer to the previous Interrogatory is anything other than an unqualified negative, state, with respect to each such complaint, notice or report:

"a. The complete name and address of the person who made it;

"b. The date on which it was made;

"c. the date on which defendant received it;

"d. the content of it;

"e. The author, addressee, date and custodian and location of each document which relates or refer [sic] to it or contains or constitutes it.

"17. Has defendant received any complaints, notice or reports of any malfunctions, in the acceleration and/or cruise-control systems used in any automobiles described in defendant's answers to Interrogatory No. 13 or 14, which resulted in the engine of such vehicle surging, overspeeding or going out of control?

"18. Has defendant received any complaints, notices or reports of any malfunctions, in the acceleration and/or cruise-control systems used in any vehicles manufactured by [it] between March of 1972 and March of 1982, inclusive, which resulted in the engine of such vehicle surging, overspeeding or going out of control?

"19. If the answer[s] to the previous two Interrogatories are anything other than unqualified negatives, state, with respect to each such complaint: [the same data as requested in No. 16].

"20. Has defendant received any complaints, notices or reports of any incident(s) of inability of operator(s) to cancel cruise-control systems in the normal manner (through use of the brake pedal) in any automobile described in defendant's answers to Interrogatory 13 or 14?

"21. Has defendant received any complaints, notices or reports of incident(s) of inability of operator(s) to cancel cruise-control systems in the normal manner (through use of the brake pedal) in any vehicle manufactured by [it] between March of 1972 and March of 1982, inclusive?

"22. If the answer[s] to the previous two Interrogatories are anything other than unqualified negatives, state, with repsect [sic] to each such complaint, notice or report: [the same data as requested in No. 16].

"23. Has defendant received any complaints, notices or reports of incident(s) of brakelight switch failure coincident with any malfunction of the cruise-control system on any vehicle manufactured by [it] between March of 1972 and March of 1982, inclusive?

"24. If the answer to the previous Interrogatory is anything other than an unqualified negative, state, with respect to each such complaint, notice or report: [the same data as requested in No. 16]."

At the same time, the plaintiffs served the manufacturer with a request to produce the following materials within twenty-eight days:

"14. Any and all documents which relate or refer to, contain or constitute complaints, notices or reports of malfunctions, in the acceleration and/or cruise-control systems of any vehicle manufactured by [it] since March of 1972, which resulted in the engine surging, overspeeding or going out of control.

"15. Any and all documents which relate or refer to, contain or constitute complaints, notices or reports of incidents of inability of operators to cancel cruise-control systems in the normal manner (through use of the brake pedal) in any vehicle manufactured by [it] since March of 1972.

"16. Any and all documents which relate or refer to, contain or constitute complaints, notices or reports of incidents of brake-light switch failure coincident with any malfunction of the cruise-control system on any vehicle manufactured by [it] after March of 1972."

The manufacturer obtained multiple extensions to answer the plaintiffs' discovery requests, the last of which

expired on June 4, 1984, without supplying any responses. On June 27, plaintiffs' counsel wrote the manufacturer's counsel that he would file a motion to compel discovery if the manufacturer did not respond shortly. When the manufacturer's counsel failed to reply, the plaintiffs' counsel filed his motion to compel responses and for monetary sanctions on July 10, 1984. Five days later, the manufacturer filed cursory answers to the plaintiffs' discovery.

The manufacturer gave this answer to question 14:

"Objection. Without waiving its objection, Versailles [the plaintiffs' model car] for the years 1977 through 1979 were equipped with a type of speed control utilized in plaintiff's car."

In answer to questions Nos. 15 and 16, it identified the plaintiff as the sole person who had made such a complaint. Its answer to question No. 17 identified the plaintiff and "John Farmer v. Ford Motor Company" without any further identification of that claimant or that suit. In response to questions Nos. 18 and 19, it said: "Objection. This interrogatory is overly burdensome and not relevant to the issues at hand." It answered question No. 20, "Yes," but then declined to give the related detail in answer to question No. 21, with the same response it gave to questions Nos. 18 and 19. Its answer to question No. 23 denied that it had received any complaints of the type described there.

The manufacturer's response to the requests for production of documents was equally brief. It gave the same answer to each of the above-quoted requests: "Objection. This request is overly burdensome and not relevant to the issues at hand." Thus, the manufacturer supplied no complaints about a cruise-control system in any car, and no meaningful informa-

tion about the existence of any such complaints. With regard to the plaintiffs' request for monetary sanctions, the manufacturer filed a single-sentence brief which asserted "the issue raised by plaintiffs' motion is moot."

On July 23, plaintiffs' counsel wrote the court that the defendant's responses were inadequate, and repeated his request for sanctions pursuant to Civ. R. 37(D). On the same date, plaintiffs' attorney detailed the inadequacy of the earlier discovery answers, in a lengthy letter to the manufacturer's counsel. When he received no reply, he wrote the manufacturer's counsel again on August 1 to ask for some response. He received none.

On October 3, 1984, the court made the following ruling on the plaintiffs' July 10 motion to compel discovery and for sanctions: "Plaintiff's motion to compel discovery is denied subject to further review at pretrial." Since the manufacturer clearly failed to file discovery responses within the allowable time after extensions, the court should have ordered monetary sanctions. Civ. R. 37(D) provides:

"* * * In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless the court expressly finds* that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.)

The court made no express determination in its entry that any circumstances excused the payment of such expenses, so they were mandatory. *Bilikam* v. *Bilikam* (1982), 2 Ohio App. 3d 300, 306, 2 OBR 332, 340, 441 N.E. 2d 845, 852. Defendant's untimely responses may have mooted the pending motion to compel answers, if they were adequate, but they did not moot plaintiffs' request for expenses.

On November 13, 1984, plaintiffs filed a second motion to compel discovery and for sanctions, with copies of their previous correspondence. The defendant made no response to that motion, and the court made no ruling on that motion.

However, the manufacturer did file three supplemental responses to the original discovery requests. On January 15, 1985, it supplied fifteen complaints it received about cruise-control systems for 1977-1979 Versailles models, the cars it originally identified as using similar cruise-control systems. On March 4, 1985, and May 31, 1985, it identified two other models it manufactured for five model years with similar cruise-control systems. It also supplied approximately ten more complaints about cruise-control problems in those cars.

On June 24, 1985, plaintiffs took the deposition of the manufacturer's design engineer. They developed information about allegedly similar cruise-control systems in all cars which the defendant manufactured since 1971. The plaintiffs' counsel promptly wrote the manufacturer's attorney to request the cruise-control incident reports for all those cars. When the manufacturer refused to comply, plaintiffs' counsel filed his third motion to compel discovery and for sanctions on August 22, 1985.

Civ. R. 37(A) governed this motion, since it concerned allegedly evasive or inaccurate responses, rather than a failure to respond. The court granted the motion on November 13, 1985. It ordered the manufacturer to produce all incident reports for cruise-control malfunctions for all vehicles which it manufactured after 1967. Ultimately the manufacturer produced more than one hundred additional incident reports in response to that order. Most of those incident reports concerned cars produced within the time designated by plaintiffs' original requests in March 1984.

The court's order makes no reference to monetary sanctions, or any circumstances which make their award unjust. Unlike Civ. R. 37(D), Civ. R. 37(A) permits the court to deny the prevailing party's motion for expenses without an express finding. The court must still find that circumstances make an award of expenses unjust, but it need not express the finding in its order. But, cf. *McCarthy* v. *Dunfee* (1984), 19 Ohio App. 3d 68, 70, 19 OBR 151, 153, 482 N.E. 2d 1291, 1294. Ordinarily, the trial court has discretion whether to make the finding and deny payment of those expenses. *In re E.I. DuPont de Nemours & Co.* v. *Thompson* (Jan. 23, 1986), Cuyahoga App. Nos. 49826 and 49834, unreported.

In this case, the circumstances strongly suggest that the manufacturer provided unreasonably evasive and incomplete answers on July 15, 1984. They further suggest that the manufacturer had no good justification for its obdurate resistance to discovery. The Civil Rules contemplate that a party must provide all reasonable discovery responses, even though it objects to some additional part of the discovery request. A party cannot rest on an objection that the request is overbroad, if it should properly respond at least in part. Just as requests can be overbroad, objections can be overbroad.

The court may well order a party to pay the adversary's expenses in overcoming an unreasonable objection. Cf. *Itskin* v. *Restaurant Food Supply Co.* (1982), 7 Ohio App. 3d 127, 129, 7 OBR 161, 162-163, 454 N.E. 2d 583, 586. Likewise, the court may order a party to pay an adversary's expenses in obtaining discoverable material which it concealed by an overbroad objection. Cf. *Minnesota Mining & Mfg. Co.* v. *ECO Chem., Inc.* (C.A. Fed.

1985), 757 F. 2d 1256, 1259-1260 (evasive answers treated as failure to respond under Fed. R. Civ. P. 37[d]); *Airtex Corp.* v. *Shelley Radiant Ceiling Co.* (C.A. 7, 1976), 536 F. 2d 145, 155 (same).

We sustain the plaintiffs' sixth assignment of error in part. We remand the case for the limited purpose of granting plaintiffs their reasonable expenses on their first motion to compel discovery. At the same time, we request the trial court to consider whether expenses are also payable in connection with plaintiffs' third motion to compel.

We overrule all other assigned errors and affirm the trial court's judgment.

*Judgment accordingly.*

PRYATEL and KRUPANSKY, JJ., concur.

### Appendix

### Assignments of Error

"I. The trial court erred in excluding from evidence all documents relating to other incidents of 'failures to cancel' in Ford vehicles with the same cruise-control system as the cruise-control in plaintiffs' Versailles.

"II. The trial court erred in restricting the use of evidence of other incidents of 'failures to cancel' in Ford cruise-control systems to evidence of 'notice' to Ford.

"III. The trial court erred in excluding all evidence of 'failures to cancel' of cruise-control systems in 1971-1973 Ford vehicles.

"IV. The trial court erred in its failure to issue orders compelling discovery from defendant Ford Motor Company.

"V. The trial court erred in its failure to enforce the one order it did issue.

"VI. The trial court erred in its failure to award attorney's fees to plaintiffs for Ford's discovery delay and obstruction.

"VII. The trial court erred in its failure to grant plaintiffs a new trial."