PATTON, Appellee,

v.

**CITY OF CLEVELAND, Appellant.**

[Cite as *Patton v. Cleveland* (1994), 95 Ohio App.3d 21.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 65403, 65682.

Decided May 12, 1994.

22

24

*Nicholas J. Schepis,* for appellee.

*Verna Jo Lanham,* Assistant Director of Law, for appellant.

NAHRA, Chief Judge.

Plaintiff-appellee, Patrick J. Patton, sued defendant-appellant, city of Cleveland, for nuisance upon a public highway. The jury's verdict was in favor of plaintiff. Defendant is appealing the trial court's order entering the jury's verdict as a final judgment and denying defendant's motion for judgment notwithstanding the verdict or a new trial, and its grant of prejudgment interest to appellee. For the following reasons, we affirm the trial court's order entering the jury's verdict and denying a judgment notwithstanding the verdict or new trial, and reverse the grant of prejudgment interest.

The city of Cleveland, Bureau of Sewer Maintenance, was performing work on Rocky River Drive, a four-lane highway. The excavation covered most of the north and southbound center lanes. The excavation was shored up with pine boards, extending six feet above the ground. Piles of dirt two to three feet high were placed on both the northbound and southbound sides. The excavation was surrounded by barricades with flashing lights and orange barrels. There was conflicting testimony over whether the flashers were working.

On February 21, 1991, at 6:30 a.m., Patrick Patton was travelling in the northbound center lane of Rocky River Drive. Patton did not see the excavation until he came upon it. He swerved his car to avoid the construction and collided with a telephone pole. Patton sustained injuries to his left knee and back. He testified that he used to play sports frequently, and could not do so after the accident.

The jury found the total amount of plaintiff's damages to be $200,000, plus $3,000 stipulated property damage. They also found that the city was eighty percent negligent and Patrick Patton was twenty percent negligent. After deducting $3,224.64 from collateral sources, the final judgment against the city was $159,175.36.

I

Defendant's first assignment of error states:

"The trial court erred when it submitted plaintiff's claim for 'loss of enjoyment of life' or hedonic damages to the jury without a special interrogatory and under a defective instruction which failed to include the language mandated by the Ohio Supreme Court in *Fantozzi v. Sandusky Cement Prod.* (1992), 64 Ohio St.3d 601 [597 N.E.2d 474], for use in all cases raising a claim of entitlement to hedonic damages."

*Fantozzi v. Sandusky Cement Prod. Co.* (1992), 64 Ohio St.3d 601, 614–618, 597 N.E.2d 474, 483–487, requires that the jury instruction contained in the *Fantozzi*

decision be given in all cases where there are allegations and evidence of the plaintiff's inability to perform usual activities. The jury instruction warns the jury against having "loss of usual function" damages overlap with other damages such as pain and suffering. *Fantozzi* holds that a special interrogatory may be given, but does not require the special interrogatory. See *Ramos v. Kuzas* (1992), 65 Ohio St.3d 42, 600 N.E.2d 241.

Here, the plaintiff requested the *Fantozzi* instruction and a special interrogatory for hedonic damages. The defendant did not request the *Fantozzi* instruction or special interrogatory. Defendant requested a general instruction regarding damages which included inability to perform functions among the items of damages. The trial court instructed the jury to find the total amount of the plaintiff's damages, and to consider, among other items, loss of enjoyment of life.

An off-the-record discussion was held regarding the instructions for hedonic damages. Later, on the record, plaintiff stated that defendant argued against the *Fantozzi* instruction. Defendant did not object to the damages instruction until after the jury commenced deliberations.

■ When there is evidence and allegations of loss of usual function damages, it is error to omit the *Fantozzi* instruction. *Fantozzi, supra.* Defendant did not object before the jury retired, so it can not raise this error on appeal, unless it is plain error. Civ.R. 51(A); *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001. Failure to give the *Fantozzi* instruction was not plain error. The jury was asked to find the total amount of plaintiff's damages, considering loss of enjoyment of life. It is unlikely the jury duplicated the damages, so prejudice did not occur by failure to give the *Fantozzi* instruction. See *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 223, 18 OBR 281, 283–284, 480 N.E.2d 802, 805.

■ Additionally, defendant invited this error by providing the court with jury instructions not containing the *Fantozzi* instruction, and not objecting until after the jury commenced deliberations. See *State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071; *Hasapes v. Drake* (1970), 24 Ohio St.2d 1, 53 O.O.2d 1, 262 N.E.2d 870. Defendant cannot raise such invited error on appeal. *Id.*

Accordingly, this assignment of error is overruled.

## II

"The trial court abused its discretion when it awarded prejudgment interest under Ohio Revised Code 1343.03(C) in a case which went to trial within eleven (11) months after filing, in which expedited discovery was provided by the city and the city entertained a good faith belief that it was not liable."

The trial court can award prejudgment interest if it determines that the plaintiff made a good faith effort to settle and the defendant did not make a good faith effort to settle. R.C. 1343.03(C). A party has made a good faith effort to settle if he (1) cooperated in discovery, (2) rationally evaluated his risks and potential liability, (3) did not cause unnecessary delay, and (4) made a good faith monetary settlement offer. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572. If a party holds an objectively reasonable belief that he has no liability, he need not make a settlement offer. *Id.*

The facts of this case indicate that the city of Cleveland did make a good faith effort to settle. On January 6, 1993, plaintiff made a demand of $8,500. At the settlement conference on January 7, plaintiff proposed $6,000. The city took the position that it was not liable.

The city decided that they had no liability because the safety devices used were sufficient to make the excavation discernible, plaintiff violated the assured clear distance statute and was greater than fifty percent negligent. Plaintiff argues that the city did not have a reasonable belief it was not liable, because the city was aware of some evidence indicating that the flasher lights may not have been working, and city records indicating that the excavation had been hit by vehicles over the weekend of February 16–18. These items of evidence were contradicted by other evidence showing that the lights were working and that the excavation was discernible. Although there was some evidence indicating the city may be liable, the city still had an objectively reasonable belief, based on the evidence, that it was not liable. *Kalain, supra;* cf. *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 20, 615 N.E.2d 1022, 1032 (party did not have objectively reasonable belief of nonliability, when undisputed facts showed the party was liable).

On January 20, 1993, plaintiff made a demand of $20,000. Defendant believed this was not in good faith, based on plaintiff's previous demands. Defendant did make an offer of $6,000 immediately before trial. This offer was a good-faith settlement offer, because it was equal to plaintiff's earlier demand. The fact that plaintiff had incurred discovery costs after the $6,000 demand did not increase the amount of recoverable damages sustained by the plaintiff.

The evidence also shows that defendant cooperated in discovery, and did not cause unnecessary delay. *Kalain, supra.* Defendant provided all requested documents and witnesses on an expedited basis, one month before trial, because of plaintiff's delay in discovery.

Plaintiff complains that defendant's answers to his interrogatories were filed one day late, were verified by defendant's counsel, and did not include information regarding prior accidents which the city had in its possession. Three days

later, defendant submitted amended answers to the interrogatories to correct these errors.

Plaintiff also asserts that defendant did not respond to requests for stipulations. Defendant believed it had already given these answers in requests for admissions, however.

■ Plaintiff argues that defendant did not produce the documents subpoenaed by plaintiff in the notice of deposition. Counsel for the city stated she did not read the second page of the notice of deposition containing the *duces tecum*. When the deposed city employees started to discuss these documents in the deposition, plaintiff requested the documents, and they were provided. While it was certainly improper to fail to produce subpoenaed documents, the city was at most negligent. A lack of good faith means more than poor judgment or negligence, and implies dishonest purpose, conscious wrongdoing or ill will in the nature of fraud. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 42, 543 N.E.2d 464, 470.

Thus, the evidence shows the city fully cooperated with discovery, did not cause delay, rationally evaluated its potential liability and made a good faith offer. *Kalain, supra.* The trial court abused its discretion in awarding prejudgment interest. *Id.*

Accordingly, this assignment of error is sustained.

## III

"Since the city cannot be held liable as a matter of law for failing to place warning signs, the trial court erred in admitting such evidence."

■ At trial, plaintiff was the first to raise the issue of lack of warning signs. Plaintiff questioned the city's employees about their duty to post construction approach signs under the Ohio Manual of Uniform Traffic Control Devices ("MUTCD") and the city's safety manual. These manuals were admitted into evidence.

Defendant argues that evidence of lack of signs should not have been admitted because defendant was not liable therefor. Erection or nonerection of traffic signs is a government function, for which a municipal corporation is generally not liable. R.C. 2744.01(C)(1)(j); 2744.02(A)(1). An exception to the general rule of nonliability is that a political subdivision is liable for failure to keep public roads open, in repair and free from nuisance. R.C. 2744.02(B)(3). Plaintiff contends that the lack of construction approach signs caused the excavation to be a nuisance. The city contends an "exception to the exception" applies, because the

nonerection of construction approach signs was discretionary, so it was immune from liability under R.C. 2744.03(A)(3), (5).

▪ A traffic control device is not "discretionary" if it is *mandated* by the MUTCD. *Lumbermens Mut. Cas. Co. v. Ohio Dept. of Transp.* (1988), 49 Ohio App.3d 129, 551 N.E.2d 215; see *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808. MUTCD Sections 7D–2 and 7F–1 require that construction approach signs be used when part of the roadway is obstructed or closed. We do not find defendant's argument convincing that MUTCD Sections 7D–3, 7F–1, 4, 7I–1, 2, 3 indicate that construction approach signs are not mandated by MUTCD. Therefore, the city is liable for failure to post construction approach signs as required by MUTCD. *Lumbermens Mut.*, *supra*; *Woods v. Beavercreek* (1989), 62 Ohio App.3d 468, 575 N.E.2d 1219.

▪ Furthermore, even if MUTCD does not mandate a sign, placement of a street sign is not always a discretionary function. *Howe v. Jackson Twp. Bd. of Trustees* (1990), 67 Ohio App.3d 159, 586 N.E.2d 217. *Howe* held that posting of a loose stone sign on a recently repaved highway was not a discretionary function, even though the sign was not mandated by MUTCD. In the case at hand, posting a construction approach sign is temporary, does not affect the flow of traffic and does not require a high degree of official discretion. See *id.* This case is distinguishable from cases involving installation of stop signs and traffic light sequences. Cf. *Winwood*, *supra*; *Lang v. Cesnik* (Aug. 6, 1992), Cuyahoga App. No. 60882, unreported, 1992 WL 189552. Posting a construction approach sign in this lane was not discretionary. Thus, the city is not immune from liability under R.C. 2744.03(A)(3) or (5) for failure to post a construction approach sign and the court did not err in allowing evidence regarding the lack of warning signs.

Accordingly, this assignment of error is overruled.

## IV

Defendant's fourth assignment of error states:

"The trial court erred in giving a general jury instruction, over the objection of the city, regarding whether warning signs should have been placed on the roadway prior to the excavation site."

Defendant contends the court's instruction regarding warning signs was erroneous because the city was not liable for the lack of warning signs. As discussed above, the city is liable for the lack of such signs.

▪ We note that the trial court did err in instructing the jury that the manuals were only some evidence of negligence. Failure to meet the MUTCD

requirements is negligence per se. *Woods v. Beavercreek, supra.* The jury must still decide the issue of proximate cause. *Id.*

Accordingly, this assignment of error is overruled.

## V

Defendant's fifth assignment of error states:

"The trial court committed plain error in giving a general jury instruction regarding future damages and permanency because no evidence had been presented on either issue."

 A jury instruction can not be given regarding future pain and suffering unless there is some evidence from which the jury could find that pain and suffering were reasonably certain to occur in the future. *Pennsylvania Co. v. Files* (1901), 65 Ohio St. 403, 62 N.E. 1047; *Day v. Gulley* (1963), 175 Ohio St. 83, 23 O.O.2d 382, 191 N.E.2d 732; *Roberts v. Mut. Mfg. & Supply Co.* (1984), 16 Ohio App.3d 324, 16 OBR 355, 475 N.E.2d 797. For a subjective injury (as opposed to an objective injury such as loss of a limb, which is obviously permanent) there must be expert evidence as to future pain and suffering. *Day* and *Roberts, supra.*

Plaintiff's expert, Dr. Roman Petroff, testified that he examined the plaintiff two years after the accident. He also looked at the x-rays and hospital records taken immediately after the accident. Petroff stated that plaintiff had a permanent preexisting condition of degenerative disc disease, which plaintiff sustained in a surfing accident two years before the collision. Plaintiff sustained whiplash of the cervical spine in the collision.

Petroff stated that whiplash will almost always exacerbate degenerative disc disease. He had taken no x-rays or MRIs to prove that the whiplash aggravated the preexisting condition. On cross-examination, he admitted he could not say to a reasonable degree of medical certainty whether the whiplash aggravated the previous injury, "except for one thing." The "one thing" was the fact that before the accident, plaintiff did not have a grinding sensation or limited range of motion of his neck. Petroff felt these problems indicated that the whiplash had caused acceleration of the degenerative process.

Petroff also stated that plaintiff suffered from patellar chondromalacia of the left knee. The patellar chondromalacia is permanent, unless an orthopedic surgeon can remove the calcification. Plaintiff testified that he is reluctant to have knee surgery, because of the risks involved.

Petroff testified that plaintiff's injuries can produce pain and that he will incur further medical expenses.

The above testimony provides some evidence that plaintiff is reasonably certain to have pain and suffering in the future as a result of the whiplash and/or patellar chondromalacia. There was testimony that the conditions were permanent and can cause pain.

■ Defendant argues that Petroff's testimony regarding the permanence of the injuries was speculative and, therefore, improper. See *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44. Expert testimony is speculative when the expert testifies to mere possibilities and not probabilities. *Id.* Petroff's testimony did establish that it was more probable than not that the knee injury and accelerated degeneration of cervical spine were permanent. Although it was possible the knee could be corrected by surgery and possible the whiplash did not aggravate the preexisting injury, the doctor's testimony indicated it was more likely the injuries were caused by the accident and were permanent.

There was valid expert testimony establishing the permanence of the injuries and that future pain and suffering were reasonably certain to occur. The trial court did not err in giving jury instructions on permanency and future pain and suffering.

Accordingly, this assignment of error is overruled.

## VI

Defendant's sixth assignment of error states:

"The trial court erred in admitting evidence from which the jury may have inferred that prior accidents occurred since there was no proof that the previous incident was substantially similar and no proof that the city was notified of the previous incident."

■ Evidence of prior accidents was presented at trial. Tom Guardi testified that one evening during the third week of January 1991, he was travelling on Rocky River Drive. There was an excavation in the center of the road. Guardi observed a pick-up truck stuck in the dirt pile, in the center southbound lane. Guardi did not know how the accident occurred. The truck left noticeable tire marks in the dirt.

Peter Manfredi, the supervisor of the excavation, testified that upon his return to work on February 19, he noticed that the pine boards on the southbound side of the excavation had been damaged. The damage appeared to have been caused over the weekend by cars hitting the barricade.

■ Evidence of prior accidents is permissible for the purpose of proving a danger existed or the city's knowledge that a danger existed. *Murphy v.*

*Nationwide Mut. Ins. Co.* (Dec. 13, 1984), Franklin App. No. 83AP–333, unreported, 1984 WL 6032; *Elyria v. Good* (1910), 17 Ohio C.C.(N.S.) 127. To be admissible, the prior accidents must occur under substantially similar conditions, not too remote in time, and must be reported to the city. *Id.; Jaffe v. Powell* (1929), 121 Ohio St. 355, 169 N.E. 31; *Cottman v. Federman* (1942), 71 Ohio App. 89, 91, 25 O.O. 435, 436, 47 N.E.2d 1009, 1011.

■ The trial court has discretion in determining if prior accidents are substantially similar. See *Babb v. Ford Motor Co.* (1987), 41 Ohio App.3d 174, 177, 535 N.E.2d 676, 680. Plaintiff had the burden to prove that the prior accidents involved similar circumstances. *Id.* There was evidence the condition of the excavation was substantially similar at the time of the prior accidents and at the time of plaintiff's accident. While the prior accidents occurred on the southbound side, there was testimony that the excavation was substantially similar on the northbound and southbound side.

There is no evidence on how any of the accidents occurred, or the actions or condition of the drivers. See *Valescu v. Cleveland Metroparks Sys.* (1993), 90 Ohio App.3d 516, 523, 630 N.E.2d 1, 5. Despite the absence of this evidence, the prior accidents were still relevant to show that a dangerous condition existed. *Id.; Murphy, supra.* Although some of the drivers may have been contributorily negligent, the evidence still shows drivers had difficulty navigating around the excavation, and a hazard existed. Thus, the trial court did not abuse its discretion in determining that the accidents were substantially similar.

The prior accidents were not too remote in time. The city had actual knowledge of the accidents reported by Manfredi, and constructive knowledge of the pick-up truck accident. See *Elyria v. Good, supra.* Thus, the evidence of prior accidents was properly admitted.

■ We also note that even if the prior accidents were not substantially similar, the admission of the evidence was not prejudicial to defendant. There was other evidence from which the jury could conclude that the city was aware that a dangerous condition existed. Failure to post a construction approach sign was negligence *per se,* as discussed above.

Accordingly, this assignment of error is overruled.

## VII

Appellant's seventh assignment of error states:

"The judgment of the jury was excessive, because it was the product of passion and prejudice and it was against the manifest weight of the evidence."

In a personal injury action, a verdict cannot be set aside as excessive, unless the verdict was the result of passion or prejudice, or the verdict is against the manifest weight of evidence. *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 25 OBR 115, 495 N.E.2d 462. This court should consider whether the jury was influenced by incompetent evidence, improper argument of counsel, or other improper conduct. *Loudy v. Faries* (1985), 22 Ohio App.3d 17, 22 OBR 52, 488 N.E.2d 235.

Defendant contends that the jury was influenced by the improper testimony of Dr. Petroff, and plaintiff's reference to the doctor's testimony in closing arguments. As discussed above, Petroff's testimony was properly admitted. The verdict was not so large that it was necessarily the result of passion or prejudice. *Litchfield, supra.* We find that the jury's verdict was not the result of passion or prejudice.

A verdict is not against the weight of the evidence if it is supported by some competent, credible evidence. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Besides the testimony of Petroff relating to damages, plaintiff testified to his injuries as follows:

Plaintiff testified that he missed one week of work because of the injuries. Aside from the hospital treatment on the day of the collision, he only made one doctor visit. Plaintiff stated he did not have insurance and could not afford treatment.

Plaintiff testified that he has pain in his knee on a daily basis, and the knee makes cracking noises when he bends over. He can no longer run and play sports, activities which he engaged in regularly before the accident. He also has cracking noises and loss of motion in his neck that he did not experience until the collision.

Thus, there is some competent, credible evidence showing permanence, past and future pain and suffering and loss of enjoyment of life. Defendant argues that the small medical bills and short time missed from work indicate that the plaintiff's pain and suffering are not so severe. The jury may have believed plaintiff's story that he did not have money for medical treatment and went to work while he was still in pain. The weight of evidence and credibility of witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

The verdict was supported by the manifest weight of the evidence and was not the result of passion or prejudice.

Accordingly, this assignment of error is overruled.

The judgment of the trial court is reversed as to award of prejudgment interest, but otherwise is affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

KRUPANSKY and DYKE, JJ., concur.