JOURNAL ENTRY and OPINION
This is an appeal from an order of Judge Christopher A. Boyko awarding prejudgment interest to appellees Stephen and Rose Penberthy on the jury verdict resulting from Stephen Penberthy's automobile related personal injury claims against appellant Daniel E. Caprett. Caprett claims it was error to find that his insurer failed to make a good faith offer of settlement for Penberthy's claimed injuries and error to award prejudgment interest on the jury verdicts for the subrogation claims of Penberthy's insurance carriers. For the reasons that follow, we affirm in part, reverse in part, and remand for recalculation of prejudgment interest.
From the record we glean the following. On July 19, 1995, while both were on their way to a job site in Carroll County, Caprett caused his motor vehicle to collide with the rear of the stopped vehicle operated by Penberthy, who described the impact as like falling off a two or three story roof; he was totally dazed. Penberthy filed a report, drove home, and the next morning was taken to Southwest General Hospital with complaints of feeling dazed, and rib and neck pain. His emergency room treatment included x-rays and a CT scan. Four days later he returned to work with complaints of headaches, and neck and shoulder pain.
Eight days after the accident he was seen on one occasion by Dr. Patel, who prescribed pain medication. When Penberthy began to experience problems with his vision, things would go dark when he moved too fast, he consulted with Dr. Thomas E. Mandat and underwent a regimen of physical therapy.
Dr. Mandat initially diagnosed Penberthy with post-concussional syndrome and cervical myofascitis. By late August 1995, his records reflect that Penberthy showed no objective signs of neck injury and his neurological examinations in August, September, and November 1995 revealed normal findings. It was the doctor's opinion that Penberthy sustained a closed head injury, post-concussional syndrome and post traumatic stress disorder which were permanent in nature. Dr. Joseph Zayat, who also treated Penberthy, diagnosis paralleled those of Dr. Mandat.
Penberthy and his wife filed suit against Caprett claiming damages for personal injury and loss of consortium. As part of discovery in that case, Dr. Howard Tucker, as Caprett's medical expert, examined Penberthy two years after the collision. He rendered an opinion in which he stated that Penberthy, as a result of the collision, sustained a mild concussion from which by definition and by clinical picture he had recovered, he could find no evidence of ongoing problems or symptomology, he could not diagnose any residual problems resulting from the initial trauma and noted that none of the neurological tests he conducted revealed any abnormalities.
The Penberthys dismissed this action under Civ.R. 41(A)(1). They refiled it on May 8, 1998, and named Nationwide Mutual Insurance Company and CNA Employees' Health Plan (CNA) as new party plaintiffs alleging each had a subrogated interest in the outcome of the action because each had paid bills arising out of Penberthy's injury related medical care. Caprett answered and, on June 18, 1998, CNA separately filed its complaint against Caprett, alleging his negligence resulted in Penberthy's injuries, it expended over $5,000 for his injury related medical care and, because of a subrogation provision in its contract, it had the right to claim that sum from Caprett. Nationwide did not otherwise appear, except for stipulations submitted at trial that it had paid $10,000 for Penberthy's collision related medical expenses and had a subrogated interest in that amount.
At the final pretrial conference on July 16, 1999, the parties engaged in settlement negotiations with the judge. The Penberthys made a final demand of $90,000 which included the amounts to which the two insurers were subrogated. The adjuster for Allstate Insurance Company, Caprett's automobile liability insurance carrier, offered $20,000 to settle all claims, including those of Nationwide and CNA. The final offer was based upon its good faith belief, given Dr. Tucker's conclusions Penberthy suffered only a mild concussion and no permanent injuries, that the Penberthys could not establish the proximate cause of their claimed injuries and damages. At an impasse, the Penberthys chose to try the case to a jury.
Caprett admitted liability for the collision but disputed the injuries. Pursuant to the agreement of the parties, the judge submitted stipulations setting forth both CNA's and Nationwide's policy provisions and their expenses related to Penberthy's injuries, and separate verdict forms for the Penberthys, CNA's, and Nationwide's damages to the jury for its consideration. The jury entered its unanimous verdicts in favor of all plaintiffs and the judge entered judgment as follows:
 Upon the evidence the jury returns verdicts in favor of the plaintiff's [sic] as follows:
(1) For Stephen Penberthy and Rose Penberthy — $28,400.00
(2) For Nationwide Mutual Insurance Co. — $10,835.78
(3) For CNA Employees Health Plan — $5,897.80
No polling of the jury requested.
Jury discharged.
The Penberthys filed a motion for prejudgment interest based upon Allstate's failure to make a good faith effort to settle, but failed to serve a copy on either CNA or Nationwide. Caprett's insurer opposed the motion based upon the reasonable dispute over extent of the injuries. Although both parties agree a hearing was held on this motion, it is not of record.
In his ruling on the motion, the judge entered the following opinion:
 Plaintiffs' Motion for Prejudgment Interest is granted on the total verdict of $45,133.58 at 10% interest from July 19, 1995.
 The Court finds that Defendant's non-negotiable settlement offer of $20,000 prior to trial was not made in good faith in light of the evidence available for evaluation, the $16,000 subrogated liens, [and] knowledge of the manner in which the liens were to be presented to the jury. Kalain v. Smith (1986), 25 Ohio St.3d 157.
 The Court further finds that this non-negotiable low-ball offer was a conscious wrongdoing under Patton v. Cleveland (1994), 95 Ohio App.3d 21.
 Further, the Court will not permit Plaintiffs to take inconsistent positions at settlement and defending this motion. Defendant made it clear that the $20,000 non-negotiable settlement offer covered the two subrogated liens and Plaintiffs' claim, leaving Plaintiffs to worry about the payoff with Nationwide Mutual and CNA. Defendant now points to the separate findings of the jury (which were agreed to ahead of time) as evidence of its good faith. Plaintiffs indicated a willingness to negotiate off the $90,000 but never did because of Defendant's unmovable posture. The Court will not punish the Plaintiffs for failing to perform a fruitless act when the Defendant gave him [sic] no option.
Caprett assigns two assignments of error for our consideration.
 I. THE TRIAL COURT ERRED IN AWARDING [sic] THE PLAINTIFFS-APPELLEES' MOTION FOR PREJUDGMENT INTEREST.
Caprett argues it was an abuse of discretion to award pre-judgment interest on the award because the Penberthys presented nothing more than subjective allegations to show that he did not make a good faith effort to settle the case. In addition, he asserts, the $20,000 settlement offer was reasonable in light of independent, objective medical and lay testimony showing that the auto collision caused of only some of Penberthy's injuries. He also claims that the Penberthys never strayed from their $90,000 settlement offer and, thus, did not show that they made a good faith effort to settle the matter.
The Penberthys counter that the $20,000 offer included subrogated claims in excess of $16,000.00 and Caprett's insurer essentially attributed less than $4,000 to the Penberthys' own pain, suffering and other monetary losses not otherwise covered by the subrogation liens. They contend that, because it quite clear that the $20,000 offer was non-negotiable, they had no incentive to move from their initial $90,000 demand.
R.C. 1343.03(C) provides:
 Interest on a judgment * * * for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.
The legislature enacted [R.C. 1343.03(C)] to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting. Kalain v. Smith (1986), 25 Ohio St.3d 157, 159, 495 N.E.2d 572, 574. R.C. 1343.03(C) also serves the additional purpose of compensating a plaintiff for the defendant's use of money which rightfully belonged to the plaintiff. Musisca v. Massillon Community Hosp. (1994), 69 Ohio St.3d 673, 676,635 N.E.2d 358, 360.
A party seeking prejudgment interest bears the burden of demonstrating that the other party failed to make a good-faith effort to settle the case. Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 659,635 N.E.2d 331. When determining whether a party has made a good faith effort to settle, a judge considers four factors: (1) whether the party fully cooperated in discovery proceedings ; (2) whether the party rationally evaluated his risks and potential liability ; (3) whether the party attempted to unnecessarily delay any of the proceedings ; and (4) whether the party made a good faith monetary settlement offer or responded in good faith to an offer from the other party. Kalain, supra. When a party has a good faith, objectively reasonable belief that he has no liability, then that party need not make a monetary settlement offer. Id. The failure to make any offer, however, should be strictly construed to comply with the statutory purpose of encouraging settlement. Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 659, 635 N.E.2d 331. When a defendant is represented by an insurance company, the inquiry whether the defendant made a good faith effort to settle must focus upon the settlement efforts of the carrier. Allgood v. Smith (Apr. 20, 2000), Cuyahoga App. Nos. 76121, 76122, unreported. At the same time,
 it is incumbent on the party seeking an award to present evidence of written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature scope and frequency of efforts to settle . Other factors would include responses or lack thereof and a demand substantiated by facts and figures. Subjective claims of lack of good faith will generally not be sufficient.
 These factors, and others where appropriate, should also be considered by a trial court in making a prejudgment interest determination. [Moskovitz, 69 Ohio St.3d at 659, 635 N.E.2d at 348.]
When a defendant states that it will not participate in further negotiations, a plaintiff is relieved of the obligation to continue negotiation efforts when those efforts would be in vain. Wagner v. Midwestern Indemn. Co. (1998), 83 Ohio St.3d 287, 293, 699 N.E.2d 507, referring to Galayda v. Lake Hosp. Sys., Inc (1994), 71 Ohio St.3d 421,429, 644 N.E.2d 298. This rule, however, does not relieve a plaintiff from making an initial settlement demand merely because counsel feels that the case is not likely to settle. Garcia v. The Cleveland Clinic (Aug. 31, 2000), Cuyahoga App. No. 77011, unreported.
The decision about whether a party's settlement efforts show good faith lies within the sound discretion of the judge and this court will not overturn such a finding absent an abuse of that discretion. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 124.
 `[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an abuse in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * *' [Id. (citations omitted).]
In a supplemental evidentiary brief supporting the motion for prejudgment interest, the Penberthys noted that the Colossus Evaluation, based upon a computer program used by Allstate to place a potential verdict or settlement value, does not evaluate psychiatric of psychological injury. While the computer valued Penberthy's claim at $19,600.00, it did not account for a large component of his injury that of post-traumatic stress disorder and post-concussive syndrome. The Penberthys pointed out that the original Allstate adjuster placed a settlement value range of $30,000.00 to $45,000.00 on the case. The $20,000 final settlement authority given to the adjuster in this case was only $400.00 more than the Colossus authority — something that, given the type of injury incurred, did not constitute a good faith effort to negotiate a final settlement.
In response, Caprett asserted that his carrier fairly valued the damages given Dr. Tucker's testimony that the concussion was only minor. On appeal, Allstate essentially argues that it rationally evaluated his [Caprett's] risks and potential liability, Kalain, supra, and claims that the Penberthys' failed to negotiate in good faith when they would not move off of their $90,000 settlement demand.
When considering the information set forth above, and given the judge's involvement in settlement negotiations and off-record motion hearing, we cannot conclude it was an abuse of discretion to determine that Allstate did not rationally evaluate its risks and potential liability in light of the fact that it did not dispute liability or that Penberthy did, in fact, sustain a closed head injury. Huffman, supra. Moreover, even if the Penberthys made no effort to demand settlement below the $90,000 initial demand, Allstate's non-negotiable offer of $20,000 relieved them of an obligation to do so since any effort to come to some meeting of the minds obviously would have been in vain. Wagner, supra. The first assignment of error is overruled.
In the second assignment of error, Caprett argues:
 II. THE TRIAL COURT ERRED IN AWARDING THE PLAINTIFFS-APPELLEES STEPHEN AND ROSE PENBERTHY PREJUDGMENT INTEREST ON THE VERDICTS AWARDED SPECIFICALLY TO THE OTHER NAMED PLAINTIFFS.
Caprett complains that, if the Penberthys are entitled to prejudgment interest, it must assess interest only upon their $28,400 award and not upon interest on the CNA and Nationwide awards. Citing this court's opinion in Edmunds Management Co. v. Centuries Surety (June 12, 1997), Cuyahoga App. No. 70441, unreported, the Penberthys argue that they are entitled to prejudgment interest on the full amount of the damage award because they, not CNA nor Nationwide, were put through the burden of preparing the case and trying it to the jury.
We find merit in this assignment of error. Unlike the facts in Edmunds, the parties here chose to allow the jury to consider and award the amounts to which CNA and Nationwide were otherwise subrogated under their separate contracts of insurance in addition to an award to which it believed the Penberthys were entitled for their pain, suffering, and any other expenses not covered by insurance. In Edmunds, the total award in favor of the plaintiff reflected the amounts to which its mortgagee, added as a necessary party defendant, was entitled. The mortgagor eventually received summary judgment on a breach of contract cross-claim against the defendant property insurer. Even though the plaintiff owed a greater amount on the mortgage note, the mortgagee agreed to accept, and the defendant insurer agreed to pay, a lesser amount. The judge granted the plaintiff's motion for prejudgment interest, added that amount to the verdict, and then subtracted the lesser amount due the mortgagee. The defendant carrier argued on appeal that the judge should have subtracted at least the lesser amount from the total award before calculating prejudgment interest. We found this argument without merit, noting that [b]ecause prejudgment interest encourages a defendant to pay the full amount due, it is logical in this case to use the full amount for which defendant was found liable to calculate the amount of prejudgment interest.
The Penberthys rely on the full amount for which defendant was found liable language of the Edmunds decision as authority for the proposition that they are entitled to prejudgment interest on all three awards. In Edmunds, the amount to which the judge granted prejudgment interest was the full amount of the jury verdict in favor of the plaintiff. In the present matter, the full amount of the jury verdict in favor of the Penberthys totaled only $28,400, and judgment was entered in their favor in that amount. While we are mindful of the purposes of R.C. 1343.03(C) as outlined in Kalai, Musisca, and other cases, we find no authority for the proposition that, in a single action, R.C. 1343.03(C) allows one plaintiff to recover prejudgment interest on both his own award and separate awards rendered in favor of other plaintiffs. In any event, to allow such recovery would not serve the purposes of R.C. 1343.03(C); it would serve as a penalty and result in a windfall, especially in those cases where more than one plaintiff requests prejudgment interest on his separate award. As a result, while the Penberthys are entitled to prejudgment interest, that interest must be calculated in accordance with R.C. 1343.03 and based upon their $28,400.00 award. We remand this matter for that purpose.
Affirmed in part, reversed in part, and remanded for calculation of prejudgment interest.
It is ordered that the parties share equally the costs herein taxed.
It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J. CONCUR; JAMES D. SWEENEY, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.