[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
James R. Drumm appeals from a judgment and decree of divorce terminating his marriage to Renee S. Drumm, which also divided property between them and ordered spousal support. James[1]
also appeals from a subsequent order requiring him to pay a portion of Renee's attorney's fees.
This opinion consolidates two separate appeals that James filed. Case No. 16631 concerns the divorce. Case No. 17115 concerns the order to pay attorney fees. James presents twenty-two assignments of error in these two cases, which are considered in order, except where they are consolidated to address a common issue.
 Divorce Case No. 16631 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR NEW TRIAL.
Civ.R. 59(A)(1) permits a trial court to order a new trial, upon motion, for an irregularity in the proceedings or an abuse of discretion that denied the movant a fair trial. Whether to order a new trial is committed to the sound discretion of the trial court. Yungwirth v. McAvoy (1972), 32 Ohio St.2d 285. Absent an abuse of discretion, an appellate court will not disturb the trial court's order. Id.
James filed a motion for a new trial, asserting several grounds for relief. The trial court denied the motion as to each of the grounds presented.
First, James argued that the trial court should not have corrected a witness's use of the term "calculation error," calling it instead "a difference of opinion." The court rejected his argument. No abuse of discretion is demonstrated.
Second, James argued that Renee's complaint for divorce should have been assigned to the same judge of the domestic relations division to whom her prior complaint for divorce, which Renee voluntarily dismissed, was assigned. James cites Mont.Loc.R. 4.05, which makes that requirement. The trial court rejected his claim. We believe that the Rule is directory, not mandatory, and is not binding on the court itself. No abuse of discretion is demonstrated.
Third, James argued that the trial court erred when it admitted certain documents into evidence. Those documents consist of letters appraising the value of several properties, which were offered to prove value. The letters were admitted on the testimony of a secretary for Renee's attorney, who had collected them from the preparers. James objected that the letters were not property authenticated. The court overruled the objection, citing Mont.Loc.R. 4.24(F)(2), which prohibits objections as to the authenticity of any document a copy of which was provided to opposing counsel at least fourteen days prior to the hearing.
"Authenticity," as that is defined by Evid.R. 901, is a uniform predicate to admissibility. Evidence must, nevertheless, be functionally relevant to a matter in issue and not subject to any express bar in the Rules of Evidence.
The letters of appraisal were out-of-court statements offered to prove the truth of their contents. They were inadmissible when offered for that purpose through the testimony of the witness concerned who had not prepared them. Evid.R. 801. Because she had received them from an outside source, they do not qualify for the "business records" exception of Evid.R. 803(6). Babb v. FordMotor Co. (1987), 41 Ohio App.3d 174. Therefore, the trial court erred when it admitted the records for the purpose for which they were offered.
The policy of the rule against hearsay is to insure the reliability of evidence, which is generally insufficient when a declarant is not available for cross-examination. In this instance, the authors of the appraisals that the court admitted eventually appeared and testified, and were thus available for cross-examination concerning their declarations. Therefore, on the record as a whole, James was not prejudiced by the court's error in admitting these documents. We see no abuse of discretion in denying his motion for new trial on those grounds.
Fourth, James argued that the trial court should not have set Renee's request for attorney's fees for a hearing when the parties had indicated that they would stipulate the amount involved. Any stipulation of fact could not require the court to grant or deny the request. No error or irregularity was demonstrated, and no abuse of discretion resulted from the trial court's rejection of this argument in support of James' motion for new trial.
Fifth, James argued that the trial court erred when it permitted Renee to offer evidence to prove that the parties' economic affairs were substantially entangled prior to their ceremonial marriage, because the court had previously granted a summary judgment for James on Renee's claim that a prior marriage existed at common law. We see no error. The evidence that Renee sought to offer was in support of her request for a division of pre-marital property pursuant to R.C. 3105.171(A)(2), which contemplates no form of marriage during the period concerned.
Sixth, James argued that Renee's attorney had badgered him and his attorney unfairly, with the court's acquiescence. We have reviewed those matters and we find that the trial court did not err when it denied James' motion for a new trial on those grounds.
Seventh, James argued that the trial court erred when it admitted audio tapes into evidence unsupported by testimony. That is not a proper basis for a motion for new trial.
Eighth, James argued that the trial court should not have admitted documents that were not given over prior to trial, as the court had ordered. The documents, which were voluminous, were apparently made available but were not examined by James' trial attorney. We see no substantial irregularity.
James makes other allegations that are not supported by the record. He does not point to facts supporting his allegation that he was deprived of a fair trial in those respects. Mere allegations are insufficient to prove that the trial court's order was an abuse of discretion.
James' first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT IN ITS DETERMINATION OF THE PARTIES DURATION OF MARRIAGE AND ERRED IN ITS FINDINGS REGARDING THE SEVERAL `CRITERIA' WHICH IT RELIED ON IN MAKING ITS DECISION.
 THIRD ASSIGNMENT OF ERROR THE TRIAL JUDGE ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED HIS DISCRETION IN MAKING A GROSSLY INEQUITABLE PROPERTY DIVISION AND IN DETERMINING WHICH ASSETS SHOULD BE AWARDED TO APPELLEE.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION IN CHARACTERIZING THE APPELLANT'S SEPARATE, PREMARITAL PROPERTY AS MARITAL AND SUBJECT TO DIVISION.
These assignments of error present common issues concerning the court's property division orders. They will be considered together.
James argues that the trial court erred in employing a presumption that an equal division of property is an equitable division. R.C. 3105.171(C) mandates an equal division unless that would be inequitable. The section thus creates such a presumption. We see no error.
James also complains that the trial court abused its discretion when it awarded him two worthless notes receivable at their face value, artificially inflating the value of the property he was awarded. However, whether these notes were worthless in value was a question of fact, and the evidence is mixed in that regard. Weighing that evidence, the court valued the notes as it did and awarded them to James on a finding that Renee had not agreed to them and that "they represent depletion of the marital estate (by James) for personal and not investment purposes." (Decree, at 9). We find no abuse of discretion.
James also argues that the trial court abused its discretion when, pursuant to R.C. 3105.171(A)(2)(b), the court found that property acquired prior to the parties' ceremonial marriage on August 23, 1986, was, nevertheless, acquired "during the marriage," and thus subject to an equitable division.
"Marital property" includes property acquired by either or both of the spouses during the marriage. R.C.3105.171(A)(3)(a)(i). "During the marriage" means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce." R.C. 3105.171(A)(2)(a). Alternatively, division (A)(2)(b) provides:
 "If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court."
R.C. 3105.171(A)(2)(b) establishes no standards or other criteria to guide the court in determining whether and when use of the dates specified in division (A)(2)(a) would be inequitable. The section appears to reiterate the general grant of "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters" conferred on the courts of common pleas by R.C. 3105.011. The effect of that grant has been held "to permit the court a free and full exercise of its general equity powers to adjust property rights between opposing spouses as it determines will serve the ends of justice." DeMilo v.Watson, Exr. (1957), 166 Ohio St. 433, 436. Nevertheless, it has also been held that "there must be a statutory basis upon which to exercise those powers before they may be put into play." Hayniev. Haynie (1959), 169 Ohio St. 467, 469.
To construe and/or apply R.C. 3103.171(A)(2)(b) to permit a domestic relations court to select dates which determine the "duration of the marriage" for purposes of property division absent some rational criteria for that determination and some evidence which satisfies those criteria is arbitrary, and arbitrary action constitutes a denial of due process. Stanton v.State Tax Com (1926), 114 Ohio St. 658. To thus deprive persons of their property without due process is in violation of the Fifth Amendment to the Constitution of the United States and Article I, Section 16 of the Constitution of Ohio. Clifton Hills Realty Co.v. Cincinnati (1938), 60 Ohio App. 443.
Some meaning concerning the equities involved in R.C.3105.171(A)(2)(b) and guidance in its application may be gleaned from the provision of R.C. 3105.011, which permits the court to exercise full equitable powers "appropriate to the determination" of domestic relations matters. In this context, that would permit a domestic relations court to employ R.C. 3105.171(A)(2)(b) to award one spouse an interest in the property of the other on some basis different from and in addition to the interests that are created by the marriage. Those equities do not replicate the considerations involved in a state of marriage that exists at common law; that is, an assumed matrimonial state that involves shared duties and responsibilities. Rather, R.C.3105.171(A)(2)(b) reasonably requires a finding that one spouse acquired a substantial interest in the property of the other even before the marriage commenced. That finding must be based on some evidence of an investment or contribution by one spouse creating that form of interest in the property of the other.
James and Renee were married ceremonially on August 23, 1986. The court found that the parties' cohabitation and emotional and financial entanglements for some eleven years prior to that date made use of the ceremonial marriage date inequitable in determining the duration of the marriage for purposes of property division. Therefore, the court selected September 1, 1975, as the date the "marriage" commenced, and it awarded Renee an equitable share in the property that James acquired after that date.
There is no evidence that Renee made any substantial contribution to or investment in James' separate property prior to the ceremonial marriage in 1986. There is evidence that she stayed over at James' house during that time, but she made no contributions toward its purchase or improvement. Neither did Renee made any substantial contribution to the acquisition of any other assets, such as boats and investment accounts, that James owned prior to the ceremonial marriage. Renee made no contribution to the family business, National Grinding, Inc. ("NGI"), but was employed there as a secretary and was compensated for her work. Indeed, the only event that appears to coincide with the date of September 1, 1975 as the date on which the "duration of the marriage" commenced is evidence that Renee was issued a bowling team membership card in the name "Renee Drumm" the following day. Therefore, the trial court abused its discretion when it held that the "duration of the marriage" commenced on September 1, 1975.
The second, third, and fourth assignments of error are sustained to the extent that the trial court's property division orders made awards based on a marriage the duration of which commenced on September 1, 1975. Those orders are reversed, and the matter or property division is remanded to the trial court for further proceedings.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION BY VALUING NATION GRINDING, INC. AT $936,000.
At the time of the decree, and for some years before, James owned 100% of the outstanding stock of NGI. He also owned a note payable by NGI in the amount of $100,000, which he inherited from his mother. The note was given to her by the corporation when she retired in exchange for her ownership interest in the company.
Each party presented expert opinion evidence concerning the value of NGI. Renee's expert opined that its value was $1,500,000. James' expert opined that its value was $650,000. The court appointed its own expert, John Bosse, who valued NGI at $697,000. The court adopted Bosse's valuation as its own finding, subject to two modifications.
First, the court increased the value of NGI by $139,000, which represented compensation that had been paid by the corporation to James' son, Christopher. The court found that this was simply a "scheme to devalue the company for litigation purposes," because Christopher's salary greatly exceeded the average in the industry for employees in similar positions. James argues on appeal that the trial court abused its discretion when it rejected the opinion of his own expert that the excess payments to Christopher would not have had a corresponding negative effect on the corporation's value. The court was free to reject that evidence. We find no abuse of discretion.
Second, the court also increased the value of NGI by $100,000, which represented the value of the note payable by NGI that James had inherited from his mother. There was evidence that the interest in NGI that she transferred to the corporations was overvalued to enhance her retirement income. The court reasoned that NGI would likely have paid off a note in a lesser and more reasonable amount after her death, and on that basis the court excluded the note as a corporate liability for purposes of the corporation's value. We do not understand how that follows. The note remains a corporate liability at its face value, which must be applied against its assets in determining the value of the corporation for these purposes.
The fifth assignment of error is overruled in part and sustained in part.
 SIXTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY AWARDING APPELLEE SPOUSAL SUPPORT FOR 10 YEARS IN THE EXCESSIVE AMOUNT OF $384,000 WHEN THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT SUPPORT ANY AWARD OF SPOUSAL SUPPORT.
The court may make an award of spousal support "after the court determines that the division or disbursement of property." R.C. 3105.18(B). Our order vacating the court's property division requires us to vacate its spousal support order, which is necessarily founded thereon, as well.
The sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN AWARDING A LUMP SUM JUDGMENT ON TEMPORARY SPOUSAL SUPPORT ARREARAGE AND IN ORDERING PAYMENT WITHOUT A HEARING AND ABUSED ITS DISCRETION IN ORDERING PAYMENT OF AN ARREARAGE IN THE AMOUNT OF $47,900.
The domestic relations court is authorized to "award reasonable spousal support to either party" during the pendency of an action for divorce. R.C. 3105.18(B). Either party may request a modification of the order during its pendency. Civ.R. 75(N). The court must conclude an oral hearing on hearing on the motion within twenty-eight days thereafter. Id.
Mont.Loc.R. 4.21 states:
 A Magistrate Order containing a pre-decree support or visitation order issued pursuant to a hearing shall be effective upon filing and shall not be subject to objections by either party. The Court does, however, retain jurisdiction to make any modifications to the temporary order during the pendency of the divorce action or at the final hearing on the action as it believes equitable and within the sound discretion of the Court.
On October 24, 1995, a magistrate issued a temporary order pursuant to Civ.R. 75(N), ordering James to pay $687 per month in temporary spousal support. James was permitted to discharge the obligation by paying the mortgage and utilities on the parties' home on Deweese Parkway. James apparently did neither, but instead paid the property taxes.
In its final judgment and decree of divorce, the court awarded Renee a judgment in the amount of $47,900 against James as a "spousal support arrearage." The court calculated this amount by multiplying the number of months since its temporary support order by $3,200, the monthly spousal support amount that it ordered James to pay after the parties were divorced. In so doing, the court exercised the power to retroactively modify its temporary support orders in a final decree for which Mont.Loc.R. 4.26 appears to provide.
Civ.R. 53(C)(3)(b) provides that any person may appeal to the court from any order of a magistrate entered pursuant to Civ.R. 75(N) by filing a motion and objections. The provision in Mont.Loc.R. 4.21 that the magistrate's order "shall not be subject to objections by either party" is inconsistent with Civ.R. 53(C)(3)(b). Courts may adopt local rules "which are not inconsistent with the rules promulgated by the supreme court." Article IV, Section 5(B), Ohio Constitution. Local rules of court which are inconsistent with a rule of practice or procedure promulgated by the Supreme Court are void. State v. Lambert
(March 16, 1993), Montgomery App. No. 13483, unreported, vacated on other grounds, 69 Ohio St.3d 356.
Neither James nor Renee moved the court to modify the magistrate's $687 per month temporary spousal support order. However, Mont.Loc.R. 4.21 would have rendered any such motion futile. Thus, a waiver of rights analysis cannot resolve the issue presented, which is whether the trial court erred when it retroactively modified the amount of temporary support in its final judgment and decree of divorce.
Mont.Loc.R. 4.21 purports to "retain jurisdiction" in the court to modify a temporary support order "at the final hearing on the action as it believes equitable and within the sound discretion of the court." The local rule bears some resemblance to R.C. 3105.18(E), which provides that a domestic relations court has continuing jurisdiction to modify a final order for alimony or spousal support under certain circumstances. That statute represents a legislative determination of the court's jurisdiction, which is a power reserved to the General Assembly by Article IV, Section 4(B) of the Ohio Constitution. Courts have no power to create their own jurisdiction; certainly, not by a local rule of practice and procedure, which is limited to procedural matters and may not affect substantive rights.
Even so, a court has the inherent power to vacate, reverse or modify one of its own orders in a matter pendante lite, that is, until it loses jurisdiction of the cause by entering a final order. That includes the power to modify its own prior temporary support orders. However, the court cannot retroactively modify an obligation it imposed in a prior temporary order, and then award judgment to the obligee based on the obligor's failure to satisfy the modified obligation in the interim. To do so grants a remedy on a claim for relief on which the obligor had no notice or opportunity to be heard. It is well-established that prior notice and opportunity to be heard concerning the determination of any matter affecting a party's rights and obligations are essential elements of due process of law. McArthur v. Kelly (1831), 5 Ohio St. 139.State ex rel. Allstate Ins. Co. V. Bowen (1936), 130 Ohio St. 347.Hatch v. Tipton (1936), 131 Ohio St. 364. A person who is deprived of property without an opportunity to be heard is denied due process of law. In re Estate of Butler (1940),137 Ohio St. 115.
A party who seeks spousal support, temporary or final, has the burden to demonstrate that he or she has a need of spousal support and that the other party has the capacity to pay support in commensurate amount. Fletcher v. Fletcher (August 24, 1992), Montgomery App. No. 12942, unreported. Affirmed, 68 Ohio St.3d 464. If an obligee wishes to have an increase in temporary support, he or she may seek to modify by making those showings. That opportunity cannot be denied by prohibiting motions to modify, as Mont.Loc.R. 4.21 does. That defect is not cured by a subsequent modification retroactive to the prior temporary order, which is itself a violation of due process. Of course, if the court concludes that an obligee has misrepresented or concealed assets in order to avoid a proper temporary support order, the court may consider that fact pursuant to R.C. 3105.18(C)(1)(n), which permits the court to consider "[a]ny other factor that the court expressly finds to be relevant and equitable" in determining the prospective spousal support order in its judgment and decree of divorce.
The trial court erred when it retroactively modified James' temporary spousal support obligation in its final decree, and then awarded Renee a judgment for the difference as an "arrearage." The seventh assignment of error is sustained.
 EIGHTH ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED HIS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY ORDERING THAT APPELLANT PAY APPELLEE'S ATTORNEY FEES IN QUANTUM MERUIT AFTER MAKING A SPECIFIC FINDING THAT THE APPELLEE AND HER ATTORNEY HAD A FIXED FEE CONTRACT.
This assignment of error will be considered with the Fourth and Fifth Assignments of Error presented in James' appeal of the award of attorney fees.
 NINTH ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR IN REQUIRING APPELLANT TO PROVIDE APPELLEE WITH A MORTGAGE INTEREST ON HIS NON-MARITAL REAL ESTATE, REQUIRING APPELLANT TO GIVE APPELLEE A LIEN ON HIS SHARES OF THE CORPORATION, AND BY ORDERING APPELLANT TO NAME APPELLEE AS THE BENEFICIARY OF A $200,000.00 LIFE INSURANCE POLICY OWNED BY THE CORPORATION TO SECURE THE PROPERTY DIVISION AWARD MADE BY THE COURT.
The court ordered James to pay Renee $230,775, plus interest, for her interests in the marital property that the court awarded to James. The court ordered James to execute a mortgage on residential real property that he separately owns to secure his debt to Renee, and to endorse the shares of NGI stock he owns to show that a lien exists on those shares in favor of Renee. The court also ordered James to designate Renee and their minor child, Tyler, as the beneficiaries of policies of insurance on his life owned by NGI.
R.C. 3105.171(J)(2) authorizes a domestic relations court that divides separate and marital property to make "[a]n order requiring the sale of encumbrancing of any real or personal property with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court." This provision applies to any property or interest in property owned by either party to the divorce action. It also permits a future sale of such property or foreclosure of an encumbrance on it for a party's failure to perform an obligation imposed by the court as part of its property division.
James argues that the court abused its discretion when it ordered him to execute a mortgage and liens in favor of Renee because the value of properties involved, a house and his stock in NGI, exceed the amount he was ordered to pay to Renee. The amount of the debt thus secured can be identified by notation on the mortgage and liens, and any future execution against these assets by Renee would be subject to set-off of any amounts that James had paid in the interim. James' sale of any of those properties would, of course, be subject to the extent of Renee's claims against them. We see no abuse of discretion in the court's orders in these respects.
The court was not, however, authorized by R.C. 3105.171(J)(2) to order James to designate Renee a beneficiary of a policy on his life owned by NGI. R.C. 3105.171(J)(2) applies to property or interests in property owned by either party to the action for divorce. It does not apply to property or interests in property owned by an entity outside the action. Such property may be made subject to R.C. 3105.171(J)(2) if the entity is joined as a party pursuant to Civ.R. 75(B)(1). There was no joinder of NGI. Therefore, the life insurance policies that NGI owns cannot be encumbered, and the court erred when it so ordered.
The ninth assignment of error is overruled in part and sustained in part.
 TENTH ASSIGNMENT OF ERROR THE COURT ERRED IN ITS COMPUTATION OF CHILD SUPPORT, AWARDING OF THE TAX EXEMPTION AND REQUIRING APPELLANT TO CONTRIBUTE TO THE CHILD'S PRIVATE TUITION EXPENSES.
The child support computation reflects interest income in the amount of $5,500 annually for James and $4,000 for Renee. The court also attributed $2,300 in other income to James. The source of these amounts is not indicated.
The court awarded Renee a McDonald Company investment account worth $134,000. James complains that in calculating the parties' gross incomes for purposes of child support the court erroneously assigned the interest income from this account to him.
Renee has failed to address this particular claim, and on this record we cannot determine the source or sources of the interest incomes that the court found. Therefore, on remand the court should address this issue, identifying the sources of the interest and other income that it has assigned to each of the parties.
James also argues that the trial court should have awarded the tax exemption for the parties' minor child to him instead of to Renee.
"Generally, under the Internal Revenue ("IRC") the custodial parent receives the tax dependency exemption." Will v. Will
(1996), 113 Ohio App.3d 8, 10, citing Section 152(e)(1), Title 26, U.S. Code. However, the court may award federal income tax dependency exemptions to noncustodial parents where it would produce a net tax savings for the parents, thereby furthering the best interest of the child. Singer v. Dickinson (1992), 63 Ohio St.3d 408, paragraph two of the syllabus. The decision to allocate the exemption is a matter left to the discretion of the trial court. Will v. Will, supra, at 11. Because the exemption is an incident of the child support order, the court has continuing jurisdiction to modify a prior assignment. R.C.3113.21(C)(1)(e).
The trial court awarded the exemption to Renee on a finding that James' income was too high to qualify for the full exemption. James argues that after various income adjustments, including lost interest because of the property division, spousal support payments and attorney fees, his income will qualify for the full exemption, $2,600, not the $1,060 that the trial court found he could use.
Some of the adjustments to income that James cites are nonrecurring items. As such, they may affect James's income in the year of the divorce, but not in the future. Accordingly, we cannot say that the trial court abused its discretion by failing to award the tax exemption to him.
James also argues that the trial court erred in ordering him to pay for half of his son's private school tuition.
If the gross income of both parents exceeds $150,000 per year, the trial court "shall determine the amount of the obligor's child support on a case-by-case basis and shall consider the needs and standard of living of the children who are the subject of the child support order and of the parents." R.C. 3113.215(B)(2)(b). James' income alone exceeds $150,000. Thus, the trial court was not bound by R.C. 3113.215(B)(3) in determining whether James must also contribute to his son's tuition in private school. Brock v.Brock (Nov. 17, 1995), Montgomery App. No. 15075, unreported. Only where the trial court found that "it would be unjust or inappropriate and would not be in the best interests of the child, obligor, or obligee to order that amount" would the trial court need to adhere to a strict percentage award.
James testified that it was his idea to enroll Tyler in a private school. (Tr. at 711). The trial court found that "the parties have by their mutual agreement enrolled the child in a private school, that the combined income of the parties is sufficient to continue this arrangement, and that it would be in the child's best interests to do so." (Decree at 14). We cannot find this conclusion to be an abuse of discretion.
James' tenth assignment of error is overruled.
 CASE NO. 17115 ATTORNEY FEES FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN STRIKING APPELLANT'S OBJECTIONS FROM THE RECORD.
Civ.R. 12(F) allows a court upon its own initiative to strike "from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent or scandalous matter." The standard of review that applies to the court's decision to strike an objection from the record is the abuse-of-discretion standard.Ohio Civil Serv. Emp. Assn. v. University of Cincinnati (1982),3 Ohio App.3d 302, 305.
James filed a number of objections to the attorney fees award. The trial court struck one of them, finding that the allegations were "impertinent and scandalous, [and] go beyond the bounds of zealous advocacy . . . ." The trial court struck James' other objections for similar reasons upon a finding that the record did not support his objections. James was permitted to reform and file his objections anew, which he did. The court then ruled upon those objections.
James argues that Civ.R. 12(F) permits the court to strike a part of a pleading, but not all of it, which is what the court did when it struck his objections in their entirety. We do not agree. The court's authority extends to any and all parts of the pleading concerned. If the court finds it shot through with such difficulties, it may strike the entire pleading.
We find no reversible error. The assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN STRIKING MATTERS FROM THE RECORD AND FURTHER ERRED IN FINDING IT "NECESSARY TO CORRECT THE RECORD".
James' attorney accused the court of threatening reprisals if James did not settle the case. He also stated that he was retained so that the trial court would not "call deputies upon his co-counsel or put her in jail."
The trial court examined the factual history of the case and determined that certain statements by James' attorney were "impertinent and unprofessional." Moreover, the trial court found that the statements were not supported by fact. The trial court then struck them from the record.
A trial court is charged with governing the proceedings before it. It is within the court's discretion to strike a matter from the record. A reviewing court will reverse the trial court's decision only if it was an abuse of discretion. The harmless error rule as set forth in the divorce assignment of error one also applies here.
James fails to demonstrate how he was prejudiced by the trial court's order striking these comments from the record. His attorney's statements do not address a central issue of the case, and excision of these statements from the transcript do not alter the outcome of the case. Any error that the trial court may have committed is harmless error.
James' second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN FINDING THAT THE MAGISTRATE PROPERLY DENIED THE CONTINUANCE REQUESTED BY APPELLANT.
 ELEVENTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FINDING THAT APPELLANT WAS NOT PREPARED FOR HEARING, THAT APPELLANT DID NOT ATTEMPT TO CALL ANY EXPERT OR LAY WITNESSES, AND THAT APPELLANT DID NOT ATTEMPT TO REBUT ANY OFFERED EVIDENCE.
When Renee requested attorneys fees, James argued that the amount of any award should be limited to $7,500, the amount fixed in her contract with her attorney. Renee argued that no such limit should apply, for two reasons. First, because the fee contract applied to representation in the first divorce case, which she voluntarily dismissed. Second, because James' litigiousness had increased her fee burden far beyond that amount. The trial court agreed, and it awarded Renee fees on a theory ofquantum meruit. The court then referred the proper amount of the fees for decision by the magistrate.
James requested a continuance of the Magistrate's hearing on Renee's request for attorney fees to allow one of his attorneys, Ms. Grandjean, to testify that a fixed fee contract existed between Renee and her attorney, and that Renee had so testified before the trial court. James argues that he was prejudiced because the magistrate did not grant his request. We do not agree. The question of whether the fixed fee contract governed the amount of fees involved was not within the court's order of reference. Even had it been, James did not need the testimony of Attorney Grandjean to prove Renee's prior testimony about the contract; he could have called Renee, who was available.
The decision of whether to grant a continuance is within the trial court's sound discretion. State v. Unger (1981), 67 Ohio St.2d 65. This court cannot reverse the trial court's decision unless there was an abuse of discretion. State v. Bayless (1976),48 Ohio St.2d 73. "[A] judge's denial of a continuance because of counsel's unpreparedness is not an abuse of discretion if the preparedness was avoidable." Hartt v. Munobe (1993), 67 Ohio St.3d 3, 9.
James offered no evidence to aid the magistrate in his decision of what a reasonable attorney fee would be. Renee offered an expert witness who opined that $250 was a reasonable hourly fee for an attorney who possessed the experience that Renee's attorney did. James did not rebut this testimony, but merely relied on the transcript of the divorce proceeding.
Although he had subpoenaed Renee, James never called her to the stand. The trial court reasonably could conclude that James was not prepared for a hearing where he did not call a witness whom he had subpoenaed, where he did not present evidence as to the reasonableness of the attorney fees, and where one of his attorneys was not present for the hearing.
James' third and eleventh assignments of error are overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FINDING THAT THE ATTORNEY FEE CONTRACT BETWEEN MR. RION AND APPELLEE WAS NOT RELEVANT TO THE ATTORNEY FEE HEARING BEFORE THE MAGISTRATE.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FINDING THAT THE FIXED FEE AGREEMENT BETWEEN MR. RION AND APPELLEE WAS RELATED TO 95-DR-50 AND NOT 95-DR-1566.
 EIGHTH ASSIGNMENT OF ERROR CASE NO. 16631 THE TRIAL COURT ABUSED HIS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY ORDERING THAT APPELLANT PAY APPELLEE'S ATTORNEY FEES IN QUANTUM MERUIT AFTER MAKING A SPECIFIC FINDING THAT THE APPELLEE AND HER ATTORNEY HAD A FIXED FEE CONTRACT.
Where there is some competent, credible evidence in the record to support the trial court's findings, those findings are not against the manifest weight of the evidence, and a reviewing court is required to give deference to them. Myers v. Garson
(1993), 66 Ohio St.3d 610; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. In determining whether the fixed fee contract applied to one case or both cases, the credibility of the witnesses and the weight to be given to their testimony were matters for the trial court, as the trier of facts, to determine.State v. DeHass (1967), 10 Ohio St.2d 230.
Where a party to a divorce proceeding has inundated his spouse with a barrage of paperwork, this court has allowed the spouse to recover her attorney fees. Jackson v. Jackson (Nov. 8, 1996), Montgomery App. No. 15795, unreported. In its decree of divorce, the trial court found that "[t]here is no doubt that the production of 700 hours of legal work in this case on defendant's behalf — prior to and not including the last full week of trial — caused plaintiff's counsel to invest time far in excess of that which is represented by the $7,500 charged to plaintiff." (Decree at 25).
The record supports the trial court's finding. James filed objections to the magistrate's decision, but the objections were stricken because of their impertinent nature. This type of legal maneuver escalates the cost of the divorce and turns the action into complex litigation.
Renee had the burden to prove the reasonableness of her attorney fees. Schaffer v. Schaffer (1996), 109 Ohio App.3d 205,214. Renee presented expert testimony that $250 per hour was a reasonable charge for an attorney who possessed the experience that her attorney did. She presented additional evidence that her attorney did not charge for the time expended on the case by other attorneys in his office or by his secretary. James did not attempt to rebut the expert testimony with evidence of his own, but merely relied on the fact that Renee and her attorney had a fixed fee contract.
James also argues that the trial court erred by finding that the fixed fee agreement applied only to the first, not the second, divorce action. The trial court found "that plaintiff [Renee] initially agreed to pay her attorney a fixed fee of $7,500 for handling this divorce case, which agreement her attorney has honored . . . ." (Decree at 25). However, whether the fixed fee agreement applied to the first or second filing for divorce, the court disregarded it on a finding that James had escalated the divorce proceeding into "complex litigation." The trial court thus ordered the magistrate to calculate the attorney fees in quantum meruit.
There is competent evidence to support the trial court's finding that James' litigiousness escalated the costs of the divorce. Therefore, we must defer to that finding. Myers v.Garson, supra. James' fourth, fifth, and eighth assignments of error are overruled.
 SIXTH ASSIGNMENT OF ERROR THE TRIAL COURT'S AWARD OF ATTORNEY FEES AND EXPENSES TO APPELLEE IN THE AMOUNT OF $44,565.25 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
The burden of proof regarding the reasonableness of attorney fees rests with the party seeking the fees. Schaffer, supra. Factors that a court should consider in determining a reasonable fee are the following: 1) the attorney's customary billing rate; 2) the reasonableness of this rate; and 3) whether there is evidence that the time the attorney spent on the case was reasonably necessary. LeBlanc v. LeBlanc (May 31, 1996), Greene App. No. 95-CA-43, unreported.
The magistrate found that although Renee's attorney usually charged a fixed fee for divorces, the aggressive litigation strategy that James had adopted greatly increased the costs of this divorce, making a fixed fee impractical.
This court will reverse the trial court's determination of a reasonable attorney fee only if the trial court has abused its discretion. "On appeal, the only questions for inquiry are whether the factual conclusions upon which the trial court based the exercise of its discretion were against the manifest weight of evidence, or whether there was an abuse of discretion." McCoy v.McCoy (1993), 91 Ohio App.3d 570, 583.
The trial court examined the relevant factors and arrived at a reasonable conclusion. A German proverb states: "A lawyer and a wagon wheel must be well greased." We cannot find that the trial court has abused its discretion. James' sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR THE TRIAL COURT'S AWARD TO APPELLEE OF LEGAL FEES IN SUBSTANTIAL EXCESS OF THE FIRST ITEMIZED FEE STATEMENT FILED BY APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.
The first fee statement that Renee filed preceded the trial, which lasted for five days. In addition, there were numerous filings after the trial to which Renee's attorney was required to respond. These facts provide competent evidence that Renee incurred additional fees after the first fee statement. The magistrate heard testimony from employees of Renee's attorney, and from a witness who testified to his calculation of reasonable attorney's fees. The magistrate also reviewed the fee statement that Renee's attorney provided.
There is competent, credible evidence that the increase in fees was justified. We thus defer to the trial court's findings. James' seventh assignment of error is overruled.
 EIGHTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN MAKING A RETROACTIVE AWARD OF FEES TO APPELLEE AS SAID FEE AWARD COVERED TIME AND EXPENSES DATING BACK TO THE INCEPTION OF THE CASE WHICH WAS WELL BEFORE APPELLEE FILED ANY MOTION FOR FEES.
 NINTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN AWARDING APPELLEE ATTORNEY FEES AND COSTS WHEN THE RECORD DOES NOT REFLECT ANY EVIDENCE OR CONSIDERATION OF THE PARTIES RELATIVE ABILITIES TO PAY. NO EVIDENCE OR CONSIDERATION OF APPELLEE'S NEED FOR ASSISTANCE WITH HER LEGAL FEES AND NO REAL EVIDENCE TO DEMONSTRATE THAT THE FEE AWARD IS REASONABLE.
 TENTH ASSIGNMENT OF ERROR THE TRIAL COURT'S DECISION TO AWARD APPELLEE ATTORNEY FEES IS NOT SUPPORTED BY AND IS WHOLLY INSUPPORTABLE UNDER O.R.C. § 3105.18(H) OR MONT. D.R. RULE 4.34(A).
In her complaint for divorce, Renee requested payment of her attorney fees as part of her prayer for relief. She again requested attorney fees in a motion filed April 22, 1997. In a May 2, 1997 order, the trial court awarded Renee her attorney fees upon finding that "the unequal financial resources of the parties require an interim award of attorney fees and legal expenses." The court stated:
 [t]his temporary support award may be increased as necessary upon application or upon the court's own motion, as circumstances require, in order to maintain the ability of both parties to represent their legal interests in this case . . . . The court reserves jurisdiction to review and modify this temporary award during the pendency of this case.
P. 4.
In its decree of divorce entered on May 19, 1997, the trial court awarded Renee 85% of her attorney's fees. The trial court found:
 the plaintiff is in need of support, including a contribution to her legal fees, as she does not have the ability to provide all of her own legal representation in this action, based on her income, earning ability and assets. The court further finds that defendant has the ability to provide such support . . . . [I]t would be inequitable to plaintiff and a denial of her right to fair representation if the court failed to make an award of attorney fees and legal expenses to her for litigation of this action, through and including any attorney fee assessment hearing.
R.C. 3105.18(H) states:
 [i]n divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees. (Emphasis added).
Loc.R. 4.34 of the Court of Common Pleas of Montgomery County, Domestic Relations Division, is substantially similar to R.C. 3105.18(H).
James argues that the trial court erred in its award of attorney fees to Renee because R.C. 3105.18(H) permits only a prospective, not a retroactive, award of attorney's fees. He argues that the trial court erred because the award covered fees and expenses that predated Renee's motion for fees.
This court has held that, because the concern of R.C.3105.18(H) is that a party will be prevented from adequately protecting his or her interests absent an award of attorneys fees, the statute operates prospectively, not retroactively. Seagravesv. Seagraves (Dec. 31, 1997), Montgomery App. No. 16405, unreported. Thus, only fees incurred on or after a motion seeking an award of fees may be allowed by the court, pursuant to R.C.3105.18(H). Id.
The trial court determined in its May 2, 1997 order that Renee was in need of assistance to pay her legal fees. Though the court then awarded but $1,000, it plainly intended to make further awards as additional fees were incurred. The basis for the award was a prospective need, as R.C. 3105.18(H) contemplates, though determination of the amount to be paid was deferred by the court until the final decree.
The finding that the court made on May 2, 1997, supports an award of attorneys fees incurred by Renee from the date of her April 22, 1997 motion for fees until the conclusion of the litigation in the trial court. However, the fee award was for attorney fees incurred from the time the complaint for divorce was filed on October 10, 1994. Renee argues that the prayer for relief in her complaint for divorce authorized the trial court to make an award of fees that R.C. 3105.18(H) contemplates. We do not agree.
A general request for "attorneys fees" in a prayer for relief fails to portray the operative facts for which R.C. 3105.18(H) permits the court to make an award of fees. Absent a pleading that sets out such facts, the adverse party has no notice of the grounds for the claim against which the party must defend. Such grounds are ordinarily presented in a motion, which is what Renee did in her motion of April 22, 1997. Arguably, they could have been set out in a motion filed with the complaint. In any event, sufficient operative facts must be pleaded, which was not the case of the prayer for relief in complaint here.
The trial court erred in awarding fees for services rendered prior to Renee's motion of April 22, 1997. Therefore, the eighth assignment of error is sustained. The court's order awarding fees will be reversed and the case remanded for recalculation of fees incurred from the correct date forward, and an award to Renee in that amount.
The court conducted no hearing on Renee's April 22, 1997 motion requesting attorneys fees to support the implicit finding of need in its May 2, 1997 decision and order. Ordinarily, any motion raising questions of fact requires a hearing. A motion made pursuant to R.C. 3105.18(H) most certainly does. The need for a hearing is not dispensed with by Mont.Loc.R. 4.34(A), notwithstanding the rule's exhortations concerning "the court's full equitable powers and jurisdiction." Local rules of court are not a vehicle to dispense with due process.
Nevertheless, the record of this case as a whole fully supports the determination of need in the court's May 2, 1997 order, and James' escalation of the costs of the ensuing litigation supports that finding. The ninth and tenth assignments of error are overruled.
 TWELFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR NEW TRIAL FILED ON MARCH 17, 1998.
A trial court may grant a new trial pursuant to Civ.R. 59 (A)(1) where there is "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial." "[T]he question of whether to grant a new trial upon the basis of the weight of the evidence is within the sound discretion of the trial court."Yungwirth v. McAvoy, supra.
In this appeal, James fails to allege those facts which could lead a reviewing court to conclude that there was irregularity in the proceedings below. James merely states that there was irregularity, and leaves us to surmise just what that irregularity may be. We decline to do so.
The twelfth assignment of error is overruled.
 Conclusion
Having sustained certain of the assignments of error presented that concern property division, spousal support, and the award of attorneys fees, the judgment of the trial court is reversed in the respects concerned, and the case is remanded for further proceedings on the claims for relief involved.
YOUNG, J. and WOLFF, J., concur.
[1] For purposes of clarity and economy, we will identify the parties by their first names.