OPINION
Defendant-appellant Keith L. Yun appeals his convictions and sentences entered by the Stark County Court of Common Pleas on one count of attempt to commit murder, in violation of R.C. 2923.02; one count of aggravated burglary, in violation of R.C. 2911.11; one count of felonious assault, in violation of R.C. 2903.11; one count of failure to comply with order or signal of police officer, in violation of R.C. 2921.331; one count of domestic violence, in violation of R.C. 2919.25(A); and one count of violating a protection order, in violation of R.C. 2919.27. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On May 19, 2000, the Stark County Grand Jury indicted appellant on the aforementioned charges. Appellant entered a plea of not guilty to the charges at his arraignment. The matter proceeded to jury trial on July 31, 2000. The following evidence was adduced at trial.
Dayna Yun testified she and her six children, as well as her babysitters, Heather and Chester Long, were residing at 1015 9th Street, NW in Canton, Ohio, on May 13, 2000, the day of the attack. Dayna noted she and her children had moved into the residence on February 1, 2000. Appellant, to whom Dayna had been married since February, 1993, lived at the residence from the second week of February, 2000, until March 27, 2000. After appellant moved out of the house, Dayna had an ATD Security System installed and the locks on the residence changed. Shortly thereafter, Dayna obtained a civil protection order against appellant issued by the Stark County Court of Common Pleas, Family Division. The protective order, which was filed on April 11, 2000, required appellant to "immediately vacate * * * 1015 9th Street NW, Canton" and granted "exclusive possession of this residence * * * to [Dayna Yun]." Additionally, the order instructed appellant to stay away from family and household members. The order further prohibited appellant from "initiating any contact, including, but not limited to, telephone, fax, e-mail, and voice contact with * * * family or household members." Dayna recalled on May 12, 2000, she was putting her children into the car, when she turned around and saw appellant driving his mother's car out of an alley and straight toward her. As a result of this incident, Dayna called appellant's mother and asked her to keep appellant away from the house. Dayna also called the police. The following morning, Dayna answered the telephone and heard appellant's voice, telling her, "You're dead." Appellant immediately hung up on her. Dayna again contacted police. The State played the 9-1-1 tape for the jury.
Later that same day, Dayna observed appellant proceeding toward the house. Dayna placed her children in the upstairs bathroom. As she walked into her bedroom to close a window, Dayna saw appellant climbing over the edge of the porch roof. Dayna slammed shut the window and locked it. Appellant broke the window and entered the house. Dayna ran downstairs with appellant in pursuit. Appellant chased Dayna into the living room, through the dining room and into the kitchen where appellant stabbed Dayna with a butcher's knife. The next thing Dayna remembered was waking up the following day in a hospital room.
Dustin Reagan, Dayna's ten year old son, testified he was downstairs on the morning of May 13, 2000, when he heard a motorcycle drive up the alley. Dustin looked out the window and observed appellant on the motorcycle. The boy ran upstairs into his mother's room and woke her up. Dustin, his siblings, and Heather and Chester Long, locked themselves into an upstairs bathroom. While in the bathroom, Dustin heard the sound of shattering glass coming from his mother's bedroom. After appellant chased Dayna downstairs, Dustin exited the bathroom and followed them. Dustin observed appellant while brandishing a butcher's knife chase his mother into the kitchen. Once in the kitchen, appellant pushed Dayna down and began to stab her. Dustin also observed appellant punching and kicking his mother. After the attack, appellant left through the side door and drove away on his motorcycle. Keith, Jr., Dayna and appellant's six year old son, also witnessed the attack.
Chester Long testified he and his wife, Heather, lived with Dayna Yun and her children. Heather babysat Dayna's children. Long recalled on the morning of May 13, 2000, Dayna entered their bedroom and informed them appellant was outside. After appellant entered the house, Long and his wife went into the bathroom with the children. Long heard Dayna run downstairs. Appellant beat on or kicked the bathroom door, then ran downstairs. After hearing a couple of thumps and hard pounding, Long left the bathroom, and jumped out of a window. He climbed down an antenna tower, ran to a neighbor's house and called 9-1-1.
After seeing appellant drive away on his motorcycle, Long ran back to Dayna's house. Long entered the house and observed Dayna covered in blood, lying on the kitchen floor. He thought she was dead. Dayna attempted to get up, but repeatedly fell down. Long assisted her into the living room and placed Dayna in a chair. Long learned his wife had also telephoned 9-1-1. Over objection of defense counsel, the State played Heather Long's 9-1-1 call for the jury. The trial court admitted the tape under the business record exception to the hearsay rule. Long verified the voice of the caller as that of his wife.
Scott Ryter, a firefighter/paramedic with the City of Canton, testified he responded to a call at 1015 9th Street NW, on May 13, 2000. The paramedics waited for the police to secure the scene. Inside the house, Ryter found Dayna in a chair. Ryter recalled Dayna had been stabbed several times and was covered with blood. Ryter believed Dayna was dead. He checked her breathing, which he found to be shallow, and her pulse, which was extremely weak indicating she was in shock. Her pulse rate was extremely high and her blood pressure was low. Dayna was transported to the hospital. Ryter remained in the emergency room to give the ER doctor any needed assistance. Ryter described a gaping hole on the inside of Dayna's arm. He observed the doctor place his fingers completely through the wound and out the other side of Dayna's arm.
Detective Richard Schaefer of the Canton Police Department testified he was called at approximately 11:20 a.m. on May 13, 2000, to investigate a stabbing at 1015 9th Street, NW. Detective Schaefer spoke with Ronnie Corie, a neighbor, as well as Chester and Heather Long. The detective had the scene photographed. He identified the photographs at trial. In the kitchen, the detective found the blade of butcher's knife in a puddle of blood, the blade of a paring knife, and the handle to the butcher's knife. The detective took custody of the evidence.
Ronnie Corie testified he was sitting on his porch on May 13, 2000, when he observed a man drive a motorcycle through an alley and park across the street from his house. A few minutes later, Corie observed the same man walking rapidly and looking "hyper." Tr. at 91. A child walked up the alley and told Corie a woman had been stabbed. He walked back to Dayna's house with the child, and observed a woman lying on the floor in a puddle of blood. Corie testified a little boy approached him and stated, "My dad killed my mom." Defense counsel objected. The trial court sustained the objection.
Patrol Officer Sam Dubina of the Canton Police Department testified he was on his lunch break when he heard a call regarding a stabbing. The dispatcher described the suspect and the motorcycle. Dubina proceeded west on 23rd Street toward Fulton, and observed the suspect driving the described motorcycle. The officer activated his lights and pursued appellant, who was headed north on Harrison Avenue. Officer Dubina observed appellant speed through the intersection of 34th Street and Harrison, failing to heed the stop sign. Appellant also ignored a red light at 38th Street. Officer Dubina continued to pursue appellant, following him onto 44th Street, toward Cleveland Avenue. The traffic was heavy both eastbound and westbound, however, appellant drove his motorcycle down the center line between the vehicles. The officer followed appellant despite a growing distance between their vehicles. Officer Dubina radioed in appellant's location. Police set up a road block on Market Avenue and Plain Center Road. The dispatcher advised appellant would probably go to his residence, in the area of Diamond Avenue. As Officer Dubina traveled toward Diamond Avenue, he heard appellant had been involved in an accident. The officer proceeded to the area and secured the scene.
Stark County Deputy Sheriff Mark George testified at approximately 11:30 a.m., on May 13, 2000, he was dispatched to Diamond Estates, in Plain Township. Deputy George was traveling east on Diamond Avenue, when he saw appellant, who was traveling in the opposite direction, come over a rise in the road. The deputy observed appellant travel left of center in order to pass three cars. Appellant moved behind a fourth vehicle, which was driven by an elderly woman. Deputy George activated his overhead lights and siren. When the elderly driver saw the cruiser sirens, she pulled to the right of the road. At the same time, appellant attempted to pass the vehicle on the right, causing his motorcycle to strike the right rear of the vehicle. The motorcycle also struck the guard wire of a telephone poll. Appellant was thrown from the vehicle and landed in the front yard of a residence on Diamond Avenue. Appellant stood up, took off his helmet, threw it on the ground, and cursed. Deputy George ordered appellant to the ground, but appellant did not comply. The deputy pulled out his baton, extended it, and again ordered appellant to the ground. Appellant ran towards Diamond Avenue. The deputy pursued appellant and struck him with the baton. Deputy George knocked appellant to the ground, ordered him onto his stomach, and handcuffed him.
After hearing all the evidence and deliberations, the jury found appellant guilty of all the charges contained in the indictment. The trial court sentenced appellant to a definite term of ten years imprisonment for the offense of attempted murder, and ten years for the offense of aggravated burglary. The trial court ordered the two sentences be served consecutively to each other. The trial court sentenced appellant to a period of eight years imprisonment for the offense of felonious assault, and ordered the sentence run concurrently with the sentences for attempted murder and aggravated burglary. The trial court sentenced appellant to a period of eighteen months for the offense failure to comply, and ordered the sentence run consecutively to appellant's sentence for attempted murder. The trial court additionally sentenced appellant to serve a period of twelve months for the offense of domestic violence, and ordered the sentence run consecutively to the sentence for failure to comply. The trial court also sentenced appellant to a period of six months local incarceration for the offense of violating a protection order. The trial court memorialized the jury's verdicts and sentences in an Entry filed August 4, 2000.
It is from these convictions and sentences appellant prosecutes this appeal, raising the following assignments of error:
 THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO ARGUE AND PRESENT EVIDENCE REGARDING APPELLANT'S PRIOR BAD ACTS.
 THE TRIAL COURT ERRED IN PERMITTING THE STATE TO OFFER INCRIMINATING HEARSAY TESTIMONY IN VIOLATION OF RULE 802 OF THE OHIO RULES OF EVIDENCE.
 THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION, AND THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO CONSECUTIVE COUNTS OF INCARCERATION, IN VIOLATION OF O.R.C. 2941.25.
 THE COURT ERRED IN ITS INSTRUCTION TO THE JURY REGARDING AN INFERENCE CONCERNING THE USE OF A DEADLY WEAPON.
 OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD.
 I
In his first assignment of error, appellant maintains the trial court erred in permitting the State to present evidence of appellant's prior bad acts. Specifically, appellant takes issue with the trial court's permitting Dayna to testify regarding an incident which occurred on the day prior to the attack during which appellant "came at me with his mother's car." Tr., Vol. II at 19-20.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court[1]. We will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion, i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.[2]
Both the Rules of Evidence and the Ohio Revised Code set forth certain circumstances under which evidence of prior bad acts may be admissible at trial. Evid. Rule 404(B) provides:
 (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
R.C. 2945.59 provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior to subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Interpreting the above provisions, the Ohio Supreme Court has held evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.[3] The Supreme Court further stated Evid. R. 404(B) and R.C. 2945.59 are to be construed against admissibility, and the standard for determining admissibility of such evidence is strict.[4]
Over objection, the trial court permitted Dayna Yun to testify regarding the incident on May 12, 2000, during which appellant drove his mother's automobile out of an alley, straight toward her while she stood outside her vehicle. Appellant was holding paperwork out the car window. The paperwork involved the divorce and separation proceedings Dayna had instituted against appellant.
Based upon our review of the testimony, we find the evidence of the May 12, 2000 incident is relevant to show appellant's motive and intent. We find the trial court's determination as such was proper as its probative value substantially outweighed any possible prejudice. Accordingly, we find the trial court did not abuse its discretion in admitting evidence of appellant's prior bad acts.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends the trial court erred in permitting the State to offer hearsay testimony. Appellant predicates this argument on two grounds. First, the State's examination of Chester Long, during which the witness verified his wife's voice from a tape recording of a 9-1-1 call, which was played to the jury. Next, the testimony of Ronnie Corie, during which one of Dayna's children came up to the witness and said "My dad killed my mom." Tr., Vol. II at 92.
With respect to the 9-1-1 call, appellant argues such was hearsay; therefore, inadmissible pursuant to Evid.R. 802. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The State offered Heather Long's 9-1-1 call under the business records exception in Evid. R. 803(6). The trial court admitted the evidence under the State's espoused exception.
As a general rule, a 9-1-1 tape is not admissible under the business records exception as the tape cannot vouch for the accuracy of the statements made by the person calling 9-1-1.[5] The Eighth and Tenth Districts have found the business records exception does not extend to information provided by an outside source who was under no business duty to be accurate.[6] However, audio recordings of 9-1-1 calls may be admissible under the "excited utterances" exception to the hearsay rule.[7] Although we find the trial court erred in admitting the 9-1-1 call under the business records exception, we find such error to be harmless as the audiotape was admissible under the excited utterance exception.
We now turn to appellant's objection to Ronnie Corie's testimony when he arrived at Dayna Yun's home, a young boy showed him the handle of a knife and stated, "My dad killed my mom." The trial court sustained appellant's objection to the evidence. Additionally, the trial court later instructed the jury not to speculate about objections which were sustained. Tr. Vol. II at 128.
Assuming, arguendo, the trial court erroneously admitted this evidence, no prejudice would have resulted because Dustin Reagan had previously testified what he observed during appellant's attack of Dayna Yun.
We hasten to note, the trial court would not have abused its discretion in admitting Corie's hearsay statement because it falls within the excited utterance exception to the hearsay rule. "To be admissible under Evid.R. 803(2) as an excited utterance, a statement must concern `some occurrence startling enough to produce a nervous excitement in the declarant,' which occurrence the declarant had an opportunity to observe, and must be made `before there had been time for such nervous excitement to lose a domination over his reflective faculties. * * * '"[8] Herein, the young boy made the statement, "My dad killed my mom" shortly after the attack. Two of the children actually witnessed the attack on their mother.
Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant raises sufficiency of the evidence and manifest weight claims. Appellant asserts the State failed to prove the element of trespass relative to the aggravated burglary charge. Additionally, appellant submits the State failed to establish venue as to each count.
In State v. Jenks[9], the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[10]
When applying the aforementioned standard of review to the case subjudice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction's were based upon insufficient evidence.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment.[11] Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.[12]
With respect to the issue of trespass, appellant argues the testimony adduced at trial not only revealed appellant and Dayna Yun were married, but also that they had resided together at the residence. Appellant further asserts the record did not establish he had a legal prohibition from being present at the address.
In State v. Lilly[13], the Ohio Supreme Court held:
 A spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling.
Upon review of the record, we find Dayna Yun and her children moved into the residence at 1015 9th Street, NW, Canton, Ohio in February, 2000. Appellant subsequently moved into the residence, but vacated the premises on March 27, 2000. On April 11, 2000, the Stark County Court of Common Pleas, Family Court Division, issued a civil protection order. Pursuant thereto, appellant was ordered to stay away from the family or household members and was to "refrain from entering any place where they may be found." The order granted exclusive possession of the residence to Dayna Yun. We find this evidence supports the jury's conclusion appellant trespassed at Dayna's residence on May 13, 2000. Accordingly, we find appellant's conviction for aggravated burglary is neither based on insufficient evidence nor is it against the manifest weight of the evidence.
We now turn to appellant's assertion the State failed to establish venue. "Venue refers to the county in which the offense is alleged to have been committed and where it is to be tried."[14] Venue is not a material element of any criminal offense, but it must be proved beyond a reasonable doubt in every criminal prosecution unless waived by the defendant.[15] The State may prove venue by direct evidence or by circumstantial evidence which establishes venue "by all the facts and circumstances in the case."[16] Venue will lie in the county where the offense, or any element of the offense, was committed.[17]
A review of the record reveals appellant's attack of Dayna occurred at her home. Dayna testified she lived at 1015 9th Street, NW, in Canton, Stark County, Ohio, and lived at the same address on May 13, 2000. Additionally, the testimony of the police officers, paramedics, and sheriffs, who participated in various aspects of the crime, established the events occurred in Stark County. Accordingly, we find the State proved venue beyond a reasonable doubt.
Appellant's third assignment of error is overruled.
 IV
In his fourth assignment of error, appellant argues the offenses of attempted murder, aggravated burglary, felonious assault, and domestic violence were "a result of single animus and arose out of the same course of conduct, . . . thereby requiring merger of and/or concurrent sentences for all charges." Brief of Appellant at 12.
Allied offenses of similar import are governed by R.C. 2941.25, which provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
When determining whether two or more offenses are allied offenses of similar import, "courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other'."[18]
We shall first compare the elements of attempted murder and aggravated burglary to determine whether the crimes are allied offenses of similar import. A person commits attempted murder when he purposely engages in conduct that, if successful, would constitute the purposeful killing of another person.[19] R.C. 2911.11, which sets forth the elements of the offense of aggravated burglary, provides:
 (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
After comparing the elements of the two offenses in the abstract, we conclude attempted murder and aggravated burglary are not allied offenses of similar import. Attempted murder, unlike aggravated burglary, does not require a trespass into an occupied structure. Additionally, attempted murder does not require the use of a deadly weapon or dangerous ordnance. Similarly, one can commit aggravated burglary without attempting murder. Accordingly, we find the trial court properly entered conviction and sentenced appellant on both counts.
We now compare the respective elements of attempted murder and felonious assault. Attempted murder is defined, supra. A person commits felonious assault when he knowingly either causes serious physical harm to another, or causes or attempts to cause physical harm to another by means of a deadly weapon or dangerous ordnance.[20] These crimes differ in at least three respects. First, attempted murder requires the offender to act "purposely," whereas felonious assault requires only that the offender act "knowingly." Second, attempted murder requires an attempt to cause the death of another person, an element not required to prove felonious assault. Finally, an offender commits a felonious assault under R.C. 2903.11(A)(2) if he uses a deadly weapon or dangerous ordnance. Conversely, the offense of attempted murder may be committed without the use of a weapon. Because attempted murder can be committed without automatically committing felonious assault, and vice versa, we find these offenses are not of similar import; therefore, the trial court properly entered convictions and sentenced appellant for both counts.
Likewise, we find attempted murder and domestic violence are not allied offenses of similar import. R.C. 2919.25(A) provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." To be convicted of domestic violence, a person is not required to attempt to kill another person. Attempted murder does not require the victim to be a family or household member. The culpable mental state for attempted murder is "purposefully", while the culpable mental state for domestic violence is merely "knowingly". As such, we find no error in the trial court's entry of convictions and sentences for these two offenses.
Finally, we compare the elements of felonious assault and domestic violence. We find domestic violence does not require the offender use a deadly weapon or dangerous ordnance. Felonious assault does not require the victim be a family or household member. The trial court did not err in entering convictions and sentencing appellant for both offenses.
Appellant's fourth assignment of error is overruled.
 V
In his fifth assignment of error, appellant asserts the trial court erred in instructing the jury appellant's culpable mental state could be inferred from the weapon used during the commission of the offenses. Appellant explains "any offense involving the use and/or possession of a deadly weapon would result in an inference supporting the legal purpose to commit and/or attempt to commit murder." Brief of Appellant at 15.
The trial court instructed the jury as follows:
 The murder statute reads: No person shall purposefully cause the death of another.
 Purpose to cause the death of another is an essential element of the crime of murder.
 A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the Defendant a specific intention to cause the death of Dayna Yun.
* * *
 Purpose is a decision of the mind to do an act with a conscious objective of engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.
 The purpose with which a person does an act is determined from the manner in which it is done, the means and/or weapon used and all the other facts and circumstances in evidence.
 If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life and/or inflict great bodily harm, the purpose to cause the death may be inferred from the use of the weapon.
* * *
 A deadly weapon means any instrument, device or thing capable, capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed or carried or used as a weapon.
 A deadly weapon is an any — is any instrument, device or thing which has two characteristics. The first characteristic is that it is capable of inflicting or causing death. The second characteristic is in the alternative: either the instrument, device or thing was designed or specially adapted for use as a weapon or it was possessed, carried or used in this case as a weapon. These are questions of fact for you to determine.
Tr., Vol. II at 132-133, 135.
The Ohio Supreme Court has addressed this identical issue:
 Appellant contends that the trial court's instructions to the jury in the guilt phase that defined "causation" in terms of foreseeability permitted a conviction for aggravated murder without proof of purpose to kill. Appellant makes a similar argument with respect to the trial court's instruction to the jury that "[i]f a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon." Appellant's arguments are not persuasive. The trial court's instructions to the jury, viewed as a whole, made it clear that a finding of purpose (and specific intent) to kill was necessary in order to convict appellant on the charge of aggravated murder. The jury in this case returned its verdicts in accordance with the overwhelming evidence on the issue. Accordingly, we find no reversible error here.[21]
Appellant's fifth assignment of error is overruled on the authority ofState v. Raglin.
 VI
In his final assignment of error, appellant submits there are errors which are apparent on the record, but not raised in his brief. We disagree.
Appellant cites to Anders v. California.[22] In Anders, appointed counsel found his indigent client's case to be wholly frivolous and without merit. The United States Supreme Court held it was error for counsel to advise the appellate court by letter without filing any motion or brief on behalf of his client. The matter currently before this Court is distinguishable from Anders in that appellant's appellate counsel filed a brief and, in fact, assigned five other errors for review. AnAnders claim under this assignment of error has no merit. A review of the record does not reveal any error which would warrant a reversal of appellant's convictions or sentences.
Appellant's sixth assignment of error is overruled.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
Hon. Julie A. Edwards, J. Hon. W. Scott Gwin, J. Hon. William B. Hoffman, J.
[1] State v. Sage (1987), 31 Ohio St.3d 173.
[2] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[3] State v. Lowe (1994), 69 Ohio St.3d 527, 530.
[4] Id. See, also, State v. Broom (1988), 40 Ohio St.3d 277, syllabus paragraph one.
[5] State v. Johnson (Apr. 26, 1996), Montgomery App. No. 15253, unreported.
[6] Babb v. Ford Motor Co. (1987), 41 Ohio App.3d 174. 177; State v.Barron (June 8, 2000), Franklin App. No. 99AP-59, unreported, 3.
[7] State v. Smith (1997), 80 Ohio St.3d 89, 107.
[8] State v. Huertas (1990), 51 Ohio St.3d 22, 31 (Citation omitted).
[9] State v. Jenks (1981), 61 Ohio St.3d 259.
[10] Jenks, supra, at paragraph two of the syllabus.
[11] State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v.Martin (1983), 20 Ohio App.3d 172, 175.
[12] State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
[13] State v. Lilly (1999), 87 Ohio St.3d 97, syllabus.
[14] State v. Grinnell (1996), 112 Ohio App.3d 124, 135.
[15] State v. Headley (1983), 6 Ohio St.3d 475, 477.
[16] Id.
[17] R.C. 2901.12(A).
[18] State v. Rance (1999), 85 Ohio St.3d 632, 638.
[19] R.C. 2903.02(A) and 2923.02(A).
[20] R.C. 2903.11(A)(1) and (2).
[21] State v. Raglin (1998), 83 Ohio St.3d 253, 264.
[22] Anders v. California (1966), 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493.